## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JIMMIE HERSHEY, individually and )
on behalf of all others similarly situated, )
                                    )
           Plaintiff, )
                                    )   Case No. 07-1300 JTM-KMH
v. )
                                    )
EXXONMOBIL OIL CORPORATION , )
                                    )
           Defendant. )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

Honorable Eric F. Melgren, Presiding

Rex A. Sharp #12350
Barbara C. Frankland #14198
Gunderson, Sharp & Walke L.L.P.
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0500
Fax (913) 901-0419

David E. Sharp KBA#10624
Gunderson Sharp & Walke, LLP
700 Louisiana, Suite 2300
Houston, TX 77002
(713) 221-2337
(713) 583-5448 fax
dsharp@midwest-law.com

Joseph Gunderson (admitted *pro hac vice*)
Gunderson Sharp & Walke, LLP
321 E. Walnut, Ste.
Des Moines, IA 50309
(515) 288-0219
(515) 288-0328 fax
jgunderson@midwest-law.com

Attorneys for Plaintiff

## TABLE OF CONTENTS

I.    NATURE OF THE MATTER ........................................................... 3

II.   ISSUES PRESENTED ................................................................... 3

III.  STATEMENT OF FACTS .............................................................. 4

      1.    *Class Definition* ................................................................. 4

      2.    *Numerosity* ........................................................................ 4

      3.    *Commonality* ..................................................................... 4

      4.    *Typicality* .......................................................................... 5

          a.    The production from all class wells follows common paths and is subjected to the same processes............................................. 5

          b.    The common method of calculating royalties paid to the class ... 7

      5.    *Adequacy* ......................................................................... 10

          a.    Class Representative.............................................. 10

          b.    Class Counsel ........................................................ 11

      6.    *Predominance* ................................................................. 12

      7.    *Superiority* ...................................................................... 14

ARGUMENT AND AUTHORITIES....................................................... 14

I.    CLASS CERTIFICATION IS APPROPRIATE IN THIS CASE ................... 14

      A.    Class Definition ................................................................. 16

      B.    Numerosity ....................................................................... 17

      C.    Commonality ..................................................................... 17

      D.    Typicality........................................................................... 18

      E.    Adequacy........................................................................... 19

II.   CLASS CERTIFICATION IS PROPER UNDER RULE 23(b)(3) ................. 20

A.   Predominance ....................................................................... 20

B.   Superiority ........................................................................ 22

III.   CERTIFICATION IS SUPPORTED BY CLASS CERTIFICATION IN A
RELATED CASE........................................................................ 22

IV.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL
UNDER RULE 26 ...................................................................... 23

V.   CONCLUSION ............................................................. 23

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Adamson v. Bowen,* 855 F.2d 668 (10th Cir. 1988) ...................................................... 18

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689
 (1997) .......................................................................................................... 14, 20, 21

*Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968) ........................................................ 23

*Gen. Tel. Co. of Southwest  v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740
(1982) ......................................................................................................................15, 17

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............................................. 19

*Heartland Communications, Inc. v. Sprint Corporation,* 161 F.R.D. 111
(D.Kan. 1995) .......................................................................................................... 23

*In re Integra Realty Res., Inc.,* 354 F.3d 1246 (10th Cir. 2004) .............................. 14-15

*In re IPO Sec. Litig.,* 471 F.3d 24 (2d Cir. 2006) ........................................................ 16

*In re Linerboard Antitrust Litig.,* 305 F.3d 145 ......................................................... 15

*In re Potash Antitrust Litig.,* 159 F.R.D. 682 ........................................................ 15-16

*In re Urethane Antitrust Litigation,* 237 F.R.D 440 (D. Kan. 2006) .......................15, 16

*In re Urethane Antitrust Litigation,* 251 F.R.D. 629, 2008 WL 4210780
(D. Kan. July 28, 2008) ........................................................................................*passim*

*J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280 (10th Cir. 1999) ...................................15, 17

*Rector v. City & County of Denver,* 348 F.3d 935 (10th Cir. 2003)............................. 15

*Reed v. Bowen*, 849 F.2d 1307 (10th Cir. 1988)........................................................... 15

*Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432 (10th Cir. 1978) .................... 15

*Robinson v. Gillespie*, 219 F.R.D. 179 (D. Kan. 1995) ............................................... 15

*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180 (10th Cir. 2002) ................. 19

*Shook v. El Paso County,* 386 F.3d 963 (10th Cir. 2004) ............................................. 15

*Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 32 (1975) ............................. 19

*Stambaugh v. Kansas Department of Corrections,* 151 F.R.D. 664 (D. Kan. 1993)..... 17

*Thompson v. Jiffy Lube Intern., Inc.,* 250 F.R.D. 607 (D. Kan. 2008) ...................17, 18

*Zapata v. IBP, Inc.,* 167 F.R.D. 147 (D. Kan. 1996) .................................................. 18

## STATE CASES

*Anderson v. Merit Energy*, Nos. 07-cv-00916-LTB and 07-cv-01025-LTB-BNB,
2008 WL 2484187 (D. Colo. June 19, 2008) ............................................................... 2

*Beer v. XTO Energy, Inc.*, 2009 WL 764500 (W.D. Okla. March 20, 2009)................. 1

*Coulter v. Anadarko*, Case No. 98-CV-40, Stevens County District Court, Kansas..2, 13

*Dragon v. Vanguard Ind., Inc.*, 277 Kan. 776, 89 P.3d 908 (2004) ........................3, 12

*Dragon v. Vanguard Ind., Inc.*, 282 Kan. 349, 144 P.3d 1279 (2006) ........................ 12

*Farrar v. Mobil Oil Corporation*, Case No. 01-CV-21, Stevens County District Court,
Kansas ........................................................................................................................2, 22

*Gray v. Amoco Production Company,* 1 Kan.App.2d 338, 564 P.2d 759 (1977) ........... 3

*Lenz v. Exxon Mobil Corp.*, Case No. 2008-CV-37, Stevens County District Court,
Kansas ........................................................................................................................... 11

*Littell v. OXY*, Case No. 98-CV-51, Stevens County District Court, Kansas ................ 2

*Parry v. Amoco Production Co.*, 2003 WL 23306663 (Colo. D. Ct., Oct. 6, 2003) ..... 13

*Parry v. Amoco Production Co.*, No. 94CV105
(La Plata Co. D. Ct., Colo. July 15, 1996) .................................................................... 2

*Payson v. Capital One Home Loans, LLC*, 2008 WL 4642639
(D. Kan. Oct. 16, 2008).........................................................................................*passim*

*Rhoten v.* Dickson, 2010 WL 323560 (Kan. Jan. 29, 2010)........................................ 22

*Schell v. OXY USA, Inc.*, No. 07-1258-JTM, 2009 WL 2355792
(D. Kan. July 29, 2009) ........................................................................................2, 12, 14

*Shutts v. Phillips Petroleum*, 222 Kan. 527, 567 P.2d 1292 (1977) .............................. 3

*Shutts v. Phillips Petroleum Co.,* 235 Kan. 195, 679 P.2d 1159 (1984) ...................3, 17

*Shutts v. Phillips Petroleum*, 240 Kan. 764, 732 P.2d 1286 (1987) ............................... 3

*Simmons v. Anadarko*, Case No. CJ-2004-57
(Caddo County District Court, Oklahoma) ...................................................... 2

*Sternberger v. Marathon Oil Co.*, 257 Kan. 315, 894 P.2d 788 (1995) ....................... 3

*Wortman v. Sun Oil Co.*, 236 Kan. 266, 268 690 P.2d 385 (1984)................................ 3

*Youngren v. Amoco Prod. Co.*, Case No. 89-C-22, Stevens County District Court,
Kansas ...............................................................................................2, 13, 14

## STATUTES AND LEGISLATIVE HISTORY

K.S.A. 55-150 ................................................................................. 10

K.S.A 55-176 .................................................................................. 10

K.S.A. 79-4216 ............................................................................... 10

K.S.A. 79-4217 ............................................................................... 10

Fed.R.Civ.P. 23 ................................................................3, 14, 15, 16

Fed.R.Civ.P. 23(a).......................................................14, 15, 20

Fed.R.Civ.P. 23(a)(2).................................................................... 17

Fed.R.Civ.P. 23(a)(3).................................................................... 18

Fed.R.Civ.P. 23(a)(4).................................................................... 19

Fed.R.Civ.P. 23(b)...................................................................14, 20

Fed.R.Civ.P. 23(b)(3).................................................................... 20

Fed.R.Civ.P. 23(c)(1)(B)............................................................... 20

Fed.R.Civ.P. 23(g) ........................................................................ 12

Fed.R.Civ.P. 23(g)(1)..................................................................... 20

Fed.R.Civ.P. 23(g)(1)(C)................................................................ 20

Fed.R.Civ.P. 26............................................................................. 23

Fed.R.Civ.P. 26(g) ................................................................................. 23

OTHER AUTHORITY

Manual for Complex Litigation § 21.222 (4th ed. 2005) ............................................. 16

Kansas Geological Survey,
http://abyss.kgs.ku.edu/pls/abyss/oil.og15.SelectLeases ............................................... 4

This royalty owners' class action seeks an accounting for, and recovery of, amounts that Defendant should have paid as royalties on production from Kansas wells.

This is a classic case for class certification. Defendant ExxonMobil Oil Corporation ("Exxon") consistently failed to properly calculate royalty payments by : (1) reducing royalty payments for gathering charges, compression charges, processing fees, transportation, fuel charges, lost and unaccounted for allowances, and other "third party expenses" before gas is in marketable condition, (2) deducting a royalty owners portion of the total severance tax reportedly paid on helium when no such tax was owing, (3) deducting a royalty owners share of the total Conservation Fee paid when no such fee could properly be deducted from royalty payments, (4) using a crude helium price to pay royalties on helium instead of the Grade A helium price that is applicable to helium that is in marketable condition, and (5) deducting processing, fractionization and other charges or fees from NGLs and helium before the NGLs or other constituents are placed into marketable condition. While the amounts subtracted have changed from time to time under various contractual arrangements, the fact of the improper reductions has remained constant.  Gas royalty owners' class actions of this sort have been repeatedly certified for class treatment in state and federal courts in Kansas.

To attempt to avoid class certification, Exxon will probably argue that the existence of different lease forms prevents class certification, a tired old argument that has been repeatedly rejected in royalty owner class actions.  *See, e.g., Beer v. XTO Energy, Inc.,* No. CIV-07-798-L, 2009 WL 764500 at *5, 7 (W.D. Okla. March 20, 2009) (certifying a class and stating: "Defendant attempts to manufacture conflicts between the class members based on differences in lease language and Btu content of the wells.  As

noted above, however, defendant's identical treatment of all royalty owners has made these differences irrelevant"…. "The variations in Btu content of the wells and lease language are immaterial given defendant's identical treatment of all class members for royalty purposes."), *permission to appeal class certification denied*, (10th Cir. May 22, 2009); *Schell v. Oxy U.S.A., Inc.*, No. 07-1258-JTM, 2009 WL 2355792 (D. Kan. July 29, 2009), *permission to appeal class certification denied,* (10th Cir. Sept. 1, 2009); *Anderson v. Merit Energy Co.,* Nos. 07-cv-00916-LTB and 07-cv-01025-LTB-BNB, 2008 WL 2484187 (D. Colo. June 19, 2008), *permission to appeal class certification denied,* (10th Cir. August 4, 2008);  *Littell v. OXY*, No. 98-CV-51, Stevens County District Court, Kansas (Journal Entry Certifying Class March 13, 2001); *Farrar v. Mobil Oil Corporation,* No. 01-CV-12, Stevens County District Court, Kansas (Journal Entry August 18, 2009), on appeal to the Kansas Court of Appeals, No. 103009; *Youngren v. Amoco Prod. Co.,* No. 89-C-22, Stevens County District Court, Kansas (Journal Entry Certifying Class February 28, 2001).[1]   Like the defendants in the foregoing cases, Exxon subjects all of its royalty owners to the same improper reductions of royalty payments, which lends itself nicely to class certification.[2]

---

[1]  *Littell, Farrar, and Youngren* are attached as Exhibits. A, B, and C to the Affidavit of David E. Sharp ("Sharp Aff.").

[2] Practically every gas producer has used the "leases are different" excuse during class certification, often using the same expert.  However, every state court in Kansas and elsewhere that recognizes implied duties to market has consistently rejected the theoretical lease distinctions as irrelevant. *See Coulter v. Anadarko*, No. 98-CV-40, (Stevens County District Court, Kansas, Order Granting Class Certification, Aug. 23, 2000) (Ex. D to Sharp Aff.); *Simmons v. Anadarko*, No. CJ-2004-57, (Caddo County District Court, Oklahoma, Amended Order Certifying Class) (Ex. E to Sharp Aff.); *Parry v. Amoco Prod. Co.*, No. 94CV105 (La Plata County District Court, Colo. July 15, 1996) (Ex. F to Sharp Aff.).  Similarly, state appellate  courts and the United States Supreme Court have found oil and gas class actions proper, even for multi-state classes:

2

## I.    NATURE OF THE MATTER

This lawsuit seeks to determine whether Exxon has underpaid royalties by consistently reducing royalty by amounts that could not properly reduce royalties, deducting a royalty owner share of a severance tax on helium that it should not have paid because no tax was owing on helium, deducting a royalty owner share of a regulatory fee (Conservation Fee) that Kansas statutes impose solely on operators (like Exxon), and failing to properly price and pay royalties on helium and other constituents of the gas stream such as NGLs.

## II.    ISSUE PRESENTED

Should this case be certified as a class action under Fed. R. Civ. P.  23?

Should Plaintiff's counsel be appointed as class counsel under Fed. R. Civ. P.  23?

---

…Kansas' long history of certifying class actions….*Shutts I,* 222 Kan. 527, 567 P.2d 1292 (involving dispute over oil and gas leases in three states); *Shutts v. Phillips Petroleum Co.,* 235 Kan. 195, 679 P.2d 1159 (1984) ( *Shutts II* ), *aff'd in part, rev'd in part and remanded,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) (oil and gas leases in three states); *Shutts v. Phillips Petroleum Co.,* 240 Kan. 764, 768, 732 P.2d 1286 (1987), *cert. denied* 487 U.S. 1223, 108 S.Ct. 2883, 101 L.Ed.2d 918 (1988) ( *Shutts III* ) (oil and gas leases in three states); *Sternberger v. Marathon Oil Co.,* 257 Kan. 315, 894 P.2d 788 (1995) (oil and gas leases in Kansas, Texas, and Oklahoma raising issues where Oklahoma and Texas law were in accord with Kansas); *Gray v. Amoco Production Company,* 1 Kan.App.2d 338, 345, 564 P.2d 579 (1977), *aff'd in part, rev'd in part* 223 Kan. 441, 573 P.2d 1080 (1978) (required application of law of Kansas, Texas, and Oklahoma on issue on which Texas and Kansas law agreed but Oklahoma law was not decided). We note that in a case not cited by the trial court, *Wortman v. Sun Oil Co.,* 236 Kan. 266, 268, 690 P.2d 385 (1984), *vacated and remanded on other grounds* 474 U.S. 806, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), this court determined that a class requiring application of the laws of six states could proceed.

*Dragon v. Vanguard Indus., Inc.,* 277 Kan. 776, 787-88, 89 P.3d 908 (2004) (*Dragon I*).

### III.   **STATEMENT OF FACTS**

1. *Class Definition:* Plaintiff seeks certification of the following class:

   > *All royalty owners* of ExxonMobil Oil Corporation (including predecessors, successors and affiliates) from Kansas wells that have produced gas and/or gas constituents (such as residue gas or methane, natural gas liquids, helium, nitrogen or condensate) from January 1, 1988 to the date of class certification.
   >
   > Excluded from the Class are: (1) the Mineral Management Service (Indian tribes and the United States); and (2) Defendant, its affiliates, predecessors, and employees, officers and directors.

2. *Numerosity.* Defendant's Answer admits that is has owned working interests in more than 1700 Kansas wells which often have multiple royalty owners for each well. (Doc. 62 at ¶ 11).  A search for ExxonMobil Oil, Mobil and Exxon Mobil Oil operated leases on the Kansas Geological Survey website lists some 1875 entries.  *See*, http://abyss.kgs.ku.edu/pls/abyss/oil.ogl5.SelectLeases (last accessed March 3, 2010) [certain pages at Sharp Aff. Ex. H]. [3]  Not surprisingly, Defendant admitted numerosity as to a slightly different class definition.  (Def. Answer to R. for A. No. 1, (Sharp Aff., Ex. I)).

3. *Commonality.*   Many common issues of fact or law exist—even though existence of only one common issue of law or fact is sufficient to satisfy the commonality requirement.  The common issues of law or fact include, but are not limited to the following:

---

[3]  Only a few illustrative pages from this public information are being filed with the Court. The complete information is available at the KGS website.  The Court may, and is requested to, take judicial notice of this information.  Plaintiff will file it all of record should the Court so desire.

1. Whether Exxon is entitled to take any deductions (or volume reductions) before residue gas, NGLs, helium and other constituents of the gas stream are in "marketable condition";

2.  Whether Defendant properly deducts a share of the "Conservation Fee" imposed on "operators" from royalty owners;

3. Whether severance tax is owed on helium;

4.  Whether royalty on helium should be calculated on a Grade A helium price or not; and/or

5. Whether prejudgment interest is owing by Exxon as a result of any failure to properly compute and timely pay royalties.

Each of the above issues is common throughout the class.

4.  *Typicality.*

**a.  The production from all class wells follows common paths and is subjected to the same processes.**  From start to finish, royalty payment from each class well is typical of royalty payment from the other class wells.  Up until the merger that resulted in ExxonMobil, Mobil owned or operated (or both) all class wells. (*See, e.g.,* Info. In Resp. to 30(b)(6) Deposition Notice ("30(b)6) Info.")( Ex. J to Sharp Aff.) & Sharp Aff. ¶ 3)).  Raw gas from each well is measured and tested to obtain volume and gas composition information. It is then gathered, dehydrated, and compressed:  primarily over the Bushton (a/k/a Hugoton), Hickok, or a few other gathering systems. (*See, e.g.,* 30(b)(6) Info.).  Thereafter, most of the raw gas is processed at one of a few processing plants: primarily the Bushton, Old Jayhawk[4], the BP Jayhawk, and National Helium plants. (30(b)(6) Info at 18 & 24-29.).

---

[4]  The "Old Jayhawk Plant" was operated by Trident and/or Oxy and is no longer in existence.  BP built a new Jayhawk Plant, sometimes called "Replacement Jayhawk Plant" that began operation in 1998.  (30(b)(6) Info at 25). To avoid confusion, Plaintiff will refer to the plant that was torn down as "Old Jayhawk" and the new plant as "BP

Prior to processing, "drip" or "condensate" is collected and sold from the gathering lines. Royalties were paid for condensate on Exxon operated gathering lines, but not paid if the gathering line was operated by someone else. (30(b)(6) Info. at 21).

At the processing plants, Defendant's gas was processed to obtain: (1) crude helium which is later refined to commercial Grade A[5] , (2) raw make or Y-grade NGLs that would have to be transported and fractionated (separated) before being sold as ethane, propane, butane, isobutate, etc., (3) residue gas which is recompressed so that it may enter the mainline transmission pipeline (Reinke Aff. at 3-5; 30(b)(6) Info at at 25 ("NGLs are delivered to either [of two] raw make pipeline systems and may be delivered to OneOk's Bushton plant for fractionization."); Sharp Aff. Ex. M (describing "volumetric royalty deductions)). [6]

---

Jayhawk". Until 1991 when they were sold, there were some class wells processed at the Spivey Plant. (see, e.g., Sharp Aff. Ex.V). Exxon also has a contract to send some gas to the Pioneer operated Satanta Plant if the BP Jayhawk Plant is not running and sent gas from a couple of wells to the Satanta Plant prior to that time. (30(b)(6) Info.at 26-7). But the gas conditioning process is essentially the same regardless of plant.

[5] Grade A helium prices are higher than the price of crude helium which Exxon uses to calculate royalties. (See, e.g., Reineke Report at 7¶B; 30(b)(6) Info at 5 ("methodologies have been based upon the proceeds paid to EMOC for … products extracted from that gas") & Sharp Aff. Ex. U showing calculations done by Exxon of lost helium value with Helium pricing at Grade A levels on page 1 and prices at the lower crude helium contract rate that Exxon received on page 2 of the exhibit and at the lower price Exxon received for selling crude helium to BOC.) The issue of the correct starting price for helium royalty calculation is also typical for all class members.

[6] Exxon also received payment for Nitrogen obtained at the Old Jayhawk Plant. (Sharp Aff. Ex. Q). It appears that Exxon may have failed to pay royalty on this Nitrogen even though it was paid for it. (30(b)(6) Info generally and at 43 (not mentioning Nitrogen at all and stating on p. 42 that "EMOC is unaware of any 'other constituent of the gas' to which any value could be assigned"). Failure to pay for Nitrogen is a claim for the Class in this case. Plaintiff's counsel currently understands that Exxon is not able to sell or obtain Nitrogen from the BP Jayhawk Plant and has requested clarification from Exxon about the situations at other plants to clarify whether the Old Jayhawk Plant was the only

It is only at this point that the gas and constituent products are at commercial grade and command a commercial, merchantable, marketable condition price. (See, e.g., Reineke Aff. at 3-6; Sharp Aff. Exs. O & P).

**b. The common method of calculating royalties paid to the class.** In addition to the gas traveling common routes and being subjected to the same treatment, the royalties paid on class wells are calculated so that the same types of reductions from royalties apply to the class.

Exxon begins its calculations with the proceeds paid to it: "[i]n general, those methodologies have been based upon the proceeds paid to EMOC for produced gas and products extracted from the gas". (30(b)(6) Info. at 5). As a result, royalty payments are reduced to the extent that volumes of gas or other constituents of the gas stream are contractually given to a gathering line, processor or other party, pursuant to a gathering, processing or other contract.[7] Next, from the starting point of proceeds received or calculated, Exxon then deducts all "third party costs" after raw gas has left the lease, describing the process as follows:

---

plant where Exxon obtained payment for Nitrogen upon which royalties apparently were not paid.

[7] Relevant contracts have been provided. (See, e.g., 30(b)(6) Info at 29 ("A copy of the processing agreement is included with the response and can be referred to for the specific terms in effect from time to time."; and at 29 ("The third party fees applicable to processing at the National Helium Plant are set forth in the agreement… the contract is being produced.") and at 17 referencing deduction of "gathering charges incurred under the KN Gas Gathering Agreement"). Exxon's practice of reducing royalty shares as stated is further shown by other statements in the 30(b)(6) Info: "it has been EMOC's practice to allocate pro rata to the royalty share the third party charges and fuel use deductions EMOC incurs in gathering, transporting and processing gas to extract liquids and helium."( id. at 22) and "[t]hird party charges incurred for such activities as processing, fractionization and helium extraction are also shared on a pro rata basis in computing royalty payments." *Id.*

-[March 1987-June 1988] "Royalty was **computed based on ... proceeds** including NGLs and helium **net of other deductible third party gathering and treating costs.**"
- **[June 1988 to May 1993]** "Valuation methodology in place … **continues."**
- **[Feb.1993 to May 1994]** "**Royalty computed based on the sales proceeds** including NGLs and helium **net of deductible third-party gathering and processing costs."**
-**[June 1994 to July 1996]** "Valuation methodology in place continues …."
-**[August 1996 to November 30, 1999]** "**Royalty computed based on the sales proceeds** … and other product sales **net of other deductible third-party gathering and processing costs."**
- **[Dec. 1999 to March 2003]** "Gathering, transportation and processing [deducted] as in prior period."
- **[March 2003 to August 2005]** "Value for royalty determined by … sales for residue plus extracted NGLs and Helium **net of third party gathering, transportation, and processing costs."**
-**[August 2005 to present]** "Royalty calculation continues as in prior period."

(30(b)(6) Info at 5-9. *Accord*, 30(b)(6) at 9 as to "Pipeline Sales" ("Royalty value was determined based on the proceeds of those sales and the proceeds from the sales of helium and natural gas liquids, **net of processing costs**), and p. 13 ("Royalties computed ratably were net of third party processing, fractionization, and gathering costs") and p. 17 ("valued…based upon the …prices received for gas and manufactured products **net of third party gathering, transportation and manufacturing costs"**)).

The same facts as to royalty payments on production gathered over Defendant's Hickok Gathering System were also admitted in Interrogatory Answers where Defendant stated that as to all times since March 6, 1996: "Mobil has taken and takes "royalty deductions" only in instances where (1) it receives a third-party invoice or statement and (2) the charge involved is not for ZP [Zero Pressure] compression" (Sharp Aff. Ex. M at Answer to Interrog. No. 2). It likewise takes volumetric deductions that fall in specific categories that are based upon metered volumes or information provided on third-party

statements. (Sharp Aff. Ex. M at Answer to Interrogatory 5). Exxon flatly admitted in another interrogatory answer that all royalties were calculated the same as to the "Hickok Interests" which was defined to be "leases which produce or have produced natural gas collected into Mobil's proprietary gathering system that is upstream from the Jayhawk Plant in Grant County, Kansas"). (Sharp Aff. Ex. L at ¶12 on the page numbered 3 and answer to Interrog. No. 6). The same methodology was also summarized by Defendant as applied to gas travelling over the Bushton Gathering systems from January 1990 forward. (Sharp Aff. Ex. K at p. numbered 9 and Exhibits attached). There, Defendant admits that it calculates royalty payments by "deducting all third party charges downstream of the well to the point of demarcation from the applicable Northern Natural Gas index price". *Id.* And, Defendant further admitted that helium and NGL royalties were paid "less plant processing fee (gallons per plant statement times contract processing fee) less fuel, transportation and taxes." *Id.* at Answer to Interrog. No. 11.

It is the propriety (not the reasonableness of the amount) of these deductions or subtractions of the third party costs (gathering, compression, fuel, lost and unaccounted for allowances, processing, treatment, fractionization, etc.) that are at issue in this case.

There is also a tax issue that is typical of all class wells. Defendant deducted a severance tax for helium from all royalty payments for helium produced from each well. (*See, e.g.*, Check Stub attached to Hershey Aff.) Plaintiff contends that the severance tax statute imposes no severance tax on helium, only on natural gas. The legal issue of whether such tax is imposed on helium is identical for all class members. If the Kansas statue imposes no severance tax on helium, then no severance tax was owing and no deduction for severance tax on helium was proper.

Another typical legal issue arises from Defendant's practice of deducting a royalty percentage of *K.S.A. 55-176's* Conservation Fee.   *K.S.A. 55-176* imposes that Fee on "operators", defined by *K.S.A. 55-150* to mean "a person who is responsible for the physical operation and control of a well, gas gathering system or underground porosity storage of natural gas."  Royalty owners are not included within the statutory definition of "operator". [8]

In short, all royalty owners are treated similarly as to calculations of royalties (actually all are treated the same with an identical royalty calculations practices.).

5.  *Adequacy*.

**a.  *Class Representative*:**  Jimmie Hershey is a royalty owner under oil and gas leases obligating Defendant to pay him royalties.  (Hershey Aff. ¶ 2 & Ex. 1; Def.'s Answer (Doc. 62 ¶ 13 ("ExxonMobil Oil has made payments to Plaintiff in consideration of royalty interests Plaintiff claims")).  Mr. Hershey has retained counsel, is familiar with the claims being asserted, and wants to see that royalty owners are properly paid. (Hershey Aff.)   He is staying informed about the litigation, will consult with counsel about important issues, and understands his obligations as class representative including to represent the best interests of the class and see that the case is vigorously prosecuted. *Id.* He has accepted the responsibilities of class representative and will fulfill them. *Id.*

---

[8] The Conservation Fee statutes contrast with severance tax statutes in which the Kansas Legislature imposed a share of the severance tax on royalty owners. *See, K.S.A. 79-4217* (severance tax "shall be borne ratably by all persons within the term "producer" as such term is defined in *K.S.A. 79-4216*"); *K.S.A. 79-4216* (expressly including royalty owners in the definition of "producer"). The Conservation Fee has been imposed throughout the class period.  *See*, *K.S.A. 55-176* (showing enactment effective in 1986).

**b.**  ___Class Counsel___.  Gunderson, Sharp & Walke, L.L.P. ("Gunderson Sharp") filed this case and has conducted all of the discovery and investigation.  It has reviewed hundreds of boxes of documents and selected over 100,000 pages for copying. Additionally, it has obtained a database on a CD containing a large volume of data about Exxon's production in Kansas.  It has obtained a lengthy document in the nature of an interrogatory setting out basic facts about how Exxon has paid royalties and the many contracts referenced therein.  It has also propounded and received responses to written discovery, and reviewed discovery from related cases.  It has retained experts to assist in its review of the case facts.

Gunderson Sharp has also prosecuted in state court a much more limited class case, *Lenz v. Exxon Mobil Corp.,* No. 2008-CV-37, in the District Court of Stevens County, Kansas.  Gunderson Aff.  *Lenz* concerns only helium and arose after Defendant quit paying royalties on helium from wells processed at the Bushton Plant.[9]  *Id.* After a discovery dispute and an order compelling production, Exxon produced thousands of pages of documents and data that did not have to be produced again in this case. *Id.*

As reflected in the Gunderson Affidavit, Plaintiff's counsel is also actively prosecuting other gas royalty owner cases in Kansas and is very familiar with the operations and commercial relationships of related gathering systems, processing plants, and marketing arrangements which may bear directly on this litigation and its proper evaluation.

---

[9]  Defendant resumed paying royalties on helium (with improper deductions litigated in this case) after it belatedly arranged to send the historical Bushton production to National Helium Plant near Liberal, Kansas for processing.

Some of the qualifications of Gunderson Sharp are set forth in the Gunderson Aff.  Three of the four Gunderson Sharp lawyers working on this case are members of the bar of this Court: Rex A. Sharp, David E. Sharp, and Barbara Frankland.  The other, Joseph R. Gunderson, has been admitted pro hac vice.  (Doc. 39).  Rex Sharp and Joe Gunderson graduated from the University of Michigan Law School, Barbara Frankland graduated from the University of Kansas Law School, and David Sharp graduated from the Harvard Law School.  *Id.*  The firm and lawyers in the firm have been lead or co-lead counsel in numerous class action cases and are actively prosecuting numerous oil and gas royalty owner class actions in state and federal courts.  Plaintiff's counsel was recently appointed as co-lead class counsel in an oil and gas class action by Judge Marten in *Schell v. Oxy U.S.A., Inc.*, No. 07-1258-JTM, 2009 WL 2355792 (D. Kan. July 29, 2009) and was  lead counsel in the leading Kansas cases on class certification requirements, *Dragon v. Vanguard Indus., Inc.,* 277 Kan. 776, 787-88, 89 P.3d 908 (2004) (*Dragon I*); *Dragon v. Vanguard Indus., Inc.,* 282 Kan. 349, 144 P.3d 1279 (2006)(*Dragon II)*, now set for trial as a class action in *Dragon III*.  Gunderson Sharp will gladly provide further information in the unlikely event that "adequacy of counsel" becomes an issue.  Plaintiff requests that Gunderson, Sharp & Walke, L.L.P. be appointed class counsel pursuant to Fed. R.Civ.P 23(g).

6.  *Predominance.*

The class-wide common issues overwhelm any individual issues.  All of the class members are treated the same as to royalty calculations.  The numbers to which royalty calculation formulas are applied come from Exxon's own records.

Other class cases illustrate that class-wide trials of the common issues are not a problem. For example, in *Youngren,* a royalty owner class was certified, over the usual objections that the individualized issues predominated and would make the trial unmanageable. Yet, the trial was fairly short, primarily a battle of the experts, and no royalty owners were called to testify live at trial about any of the merits. Sharp Aff. Ex. Q. The same happened in *Coulter v. Anadarko Petroleum Corp.* (Sharp Aff. Ex. X), and the same can be expected in this case.

In *Parry v Amoco Prod. Co. n/k/a BP America Prod. Co.*, a Colorado case where the class period began in June of 1991 and ended in October 31, 2001 (Doc. 54-8 at 2), BP and its IBM contractor computed the amount that would be owing to each member of the class as damages using the records maintained by or for BP. (Parry Settlement Trans. Hearing, Statements by BP's counsel, Sharp Aff. Ex. T.). The calculations of amounts owing to each royalty owner were done using the PREMAS system that started in 1993 for Colorado and by going behind that system for earlier times. *Id.* The calculation was done after a class wide liability trial. *See, Parry v. Amoco Prod. Co.,* No. 94CV105, 2003 WL 23306663 (Colo. Dist. Ct. Oct. 6, 2003).

In *Youngren*, the court certified a class beginning on the same date as the class requested in this case, tried the liability issues about the propriety of deductions taken for Gathering Fees, and eventually approved a settlement entered after trial. (Sharp Aff. Ex. C & Ex. S.). At the trial, there was no testimony by any royalty owner class member. (Sharp Aff. Ex. R, excerpts from *Youngren* Trial Transcripts). So it is here, there is no need for any substantial testimony of royalty owner class members and the amounts

owing to each royalty owner can be computed using corrected methodology once it has been determined what formulas or methods historically used by Exxon are incorrect.

7. *Superiority.*

This suit seeks to have an accounting for thousands of royalty owners to recover for underpayment of royalties.  One single class action that resolves the many common factual and legal issues is superior to thousand of lawsuits raising the same issues and consuming the resources of courts and juries.   Further, most, if not all, members of the class have small enough claims that it would not be economical for them to prosecute their own, separate lawsuits.  Indeed, in the *Youngren* case, with a settlement amount including interest of over $32 million, most class members did not receive any substantial sum.  (*See* Sharp Aff. ¶W & Ex. W).  No other way has been suggested as a way to reasonably adjudicate the dispute between all class members and Defendant.

## ARGUMENT AND AUTHORITIES

## I.   CLASS CERTIFICATION IS APPROPRIATE IN THIS CASE.

Not long ago, this district granted class certification in *In re Urethane Antitrust Litig.*, 251 F.R.D. 629 (D. Kan. July 28, 2008), (Rule 23(f) interlocutory appeal denied, 10th Cir. Sept. 2, 2008) (*Urethane II*) and in *Payson v. Capital One Home Loans, LLC*, No. 07-2282-JTM, 2008 WL 4642639 (D. Kan. Oct. 16, 2008).  Recently, an oil and gas class action was certified in *Schell v. Oxy U.S.A.*, *Inc.*, No. 07-1258-JTM, 2009 WL 2355792 (D. Kan. July 29, 2009).

In *Payson*, this Court summarized the standards for class certification:

> Federal Rule of Civil Procedure 23 sets forth the standards for certifying a class action, and requires that all four prerequisites of Rule 23(a) and at least one of the three requirements of Rule 23(b) are satisfied. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997); *In re Integra Realty Res.,*

*Inc.,* 354 F.3d 1246, 1262 (10th Cir.2004). The trial court has broad discretion in determining whether to certify a class. *Rector v. City & County of Denver,* 348 F.3d 935, 949 (10th Cir.2003). The trial court must perform a rigorous analysis of whether the proposed class satisfies the requirements of Rule 23. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 155 (1982). The court should accept the allegations in the complaint as true, although it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may ... consider the legal and factual issues presented by plaintiff's complaints." *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1290 n. 7 (10th Cir.1999). Further, the court is to "remain focused on the requirements of Rule 23 rather than looking at the merits underlying the class claim. *In re Urethane Antitrust Litigation*, No. 04-1616, 2008 WL 4210780, at *2 (D.Kan. July 28, 2008) (citing *Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir.2004)).

2008 WL 4642639 at *2. The "rigorous analysis" is of the Rule 23 factors which will all be addressed below.[10] The facts are set forth above, and to the extent the facts are disputed, the factual disputes are resolved in Plaintiff's favor. *See In re Urethane Antitrust Litig,* 237 F.R.D. 440, 451 (D. Kan. 2006) (quoting *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 152 (3ʳᵈ Cir. 2002)); *see also In re Potash Antitrust Litig.*, 159

_____

[10] This is sometimes also referred to a strict analysis or a strict burden. *See Robinson v. Gillespie,* 219 F.R.D. 179, 183 (D. Kan. 1995) (citing *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir. 1988) which explained that this standard applies to the Rule 23 factors and not to the facts of the case:

> A party seeking to certify a class is required to show "under a strict burden of proof, that all the requirements of [Fed.R.Civ.P.] 23(a) are clearly met." *Rex v. Owens ex rel. State of Oklahoma*, 585 F.2d 432, 435 (10th Cir.1978) (citations omitted); *see also General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) (Class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied).

*Reed*, 849 F.2d at 1309.

F.R.D. 682, 697 (D. Minn. 1995) (plaintiff "need only make a threshold showing")

("*Urethane I*"). [11]

    A.    <u>Class Definition</u>

"The definition must be precise, objective, and presently ascertainable." <u>Manual for Complex Litigation</u> § 21.222, at 270 (4th ed.2005). *Urethane I*, 237 F.R.D. at 445. The Class in this case is defined as:

> All royalty owners of ExxonMobil Oil Corporation (including predecessors, successors and affiliates) from Kansas wells that have produced gas and/or gas constituents (such as residue gas or methane, natural gas liquids, helium, nitrogen or condensate) from January 1, 1988 to the date of class certification.

> Excluded from the Class are: (1) the Mineral Management Service (Indian tribes and the United States); and (2) Defendant, its affiliates, predecessors, and employees, officers and directors.

This definition is precise, objective, and presently ascertainable. [12]  Indeed, the evidence shows that Defendant maintains listings of all its wells, all the wells that are not within the class, and, of course, all royalty owners.

---

[11] Some federal courts that have not divided discovery between class certification and merits have imposed a higher burden of proof than a "prima facie" showing. Some, but not all, federal courts have done so based on a recent change in Rule 23 that permits more extensive discovery before class certification is decided. *See In re IPO Sec. Litig.*, 471 F.3d 24, 39 (2d Cir. 2006) (2003 amendments "arguably combine to permit a more extensive inquiry into whether Rule 23 requirements are met than was previously appropriate"). However, in this case, where discovery was bifurcated, the usual older class certification threshold should be followed.  In any event, it would be inappropriate to hold Plaintiff to a burden of proof equal to even summary judgment proof before merits discovery is complete.

[12] Any problems with the definition can be clarified and refined during the reply brief, or even during oral argument. *Urethane II*, 251 F.R.D. 629, 633 (D. Kan. 2008).  Plaintiff reserves the right to do so should such be necessary.

B.     Numerosity

There are thousands of class members in this case.  Far fewer class members are

needed to make a class.  *Stambaugh v. Kansas Department of Corrections*, 151 F.R.D.

664, 673 (D. Kan 1993) (class of 40 was sufficient); *Payson*, 2008 WL 4642639 at *3

(265 class members sufficient).  This case greatly exceeds such numbers and it is

doubtful that Defendant will contest this Rule 23 factor.

C.     Commonality

> Rule 23(a)(2) requires some question of law or fact common to the class.
> To meet this requirement, members of a putative class must "possess the
> same interest and suffer the same injury." *Gen. Tel. Co. of Southwest v.
> Falcon,* 457 U.S. 147, 156 (1982). The threshold for commonality is not
> high, and does not require that class members share every factual and legal
> predicate. *Thompson v. Jiffy Lube Intern., Inc.,* 250 F.R.D. 607
> (D.Kan.2008).

*Payson*, 2008 WL 4642639 at *3.  The rule requires the existence of either a common

question of fact or a common question of law, not the presence of both.  *Shutts v. Phillips*

*Petroleum Co.*, 235 Kan. 195, 212, 679 P.2d 1159 (1984) (*Shutts II*), *aff'd in part, rev'd*

*in part and remanded*, 472 U.S. 797 (1985) (recognizing this factor is stated in the

disjunctive).  A single issue of law or a single issue of fact common to the class is

sufficient.  *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).

In *Payson*, defendant raised theoretical individualized issues in an unsuccessful

attempt to distract from its common policy in practice:

> Plaintiffs argue that there is simply one question of law, and that is it is
> common to the class of Loan Consultants: Do COHL's two policies violate
> the KWPA? Plaintiffs further argue that all Loan Consultants would have
> an interest in whether these two policies violate the KWPA, and that they
> all suffered the same type of injury. Defendants counter that plaintiffs'
> framed issue would require this court to examine the nature and
> application of each of the five Commission Adjustments and the
> Managers' Pool to determine whether these policies are an integral part of

>      COHL's commission formula. Additionally, defendants argue that the
>      policies in question do not apply to or affect all of the Loan Consultants,
>      because some Loan Consultants have never received any of the five
>      adjustments.

*Payson*, 2008 WL 4642639 at *4.  As is typical in oil and gas class actions and those

involving policies that are commonly applied, the Court adopted the practical alternative:

>      This court is not swayed by defendant's arguments. Although some degree
>      of individual inquiry would be necessary to determine the amount of
>      damages incurred, the actual legal question is common to all Loan
>      Consultants. If it is determined that the policies did in fact violate the
>      KWPA, then an individualized inquiry would need to take place, but only
>      to determine damages.

*Payson*, 2008 WL 4642639 at *4.  This is the usual approach-- that damage differences

do not destroy class certification.  Here class members have the same dispositive legal

issues and are treated the same by Defendant.  There are numerous common issues of law

or fact as recited in the Facts above, and commonality requires there be only one such

issue.

>      D.      <u>Typicality</u>

>      Rule 23(a)(3) requires that "the claims and defenses of the representative
>      parties are typical of the claims or defenses of the class." A class
>      representative must possess the same interest and suffer the same injury as
>      the class members. *Thompson,* 250 F.R.D. at 610. Typicality determines
>      whether a sufficient nexus exists between the claims of the named
>      plaintiffs and the class. *Id.* Claims need not be identical to be typical.
>      *Zapata v. IBP, Inc.,* 167 F.R.D. 147, 160 (D.Kan.1996). "[D]iffering fact
>      situations of class members do not defeat typicality ... so long as the
>      claims of the class representative and class members are based on the
>      same legal or remedial theory." *Adamson v. Bowen,* 855 F.2d 668, 675
>      (10th Cir.1988).

*Payson*, 2008 WL 4642639 at *4.  "Typicality refers to the nature of the claims of the

representative, not the individual characteristics of the plaintiff." *Urethane II*, 251 F.R.D.

at 640.  The nature of the claims will be the same here if brought multiple times by various class members, or once as a class action.

In *Payson*, this Court properly focused on liability, not damages, as the key to class certification.

> Again, the court finds that the over-riding question is simply whether the deductions were improper. Only if that question is answered affirmatively will individualized inquiries become reality, and such a determination would only assess the damages. In essence, defendants raise issue with the extent of a possible injury, while the court is more concerned about whether there was a violation or not. As such, plaintiffs have met the typicality requirement.

*Payson*, 2008 WL 4642639 at *4.  Since the propriety, or lack thereof, of Defendant's royalty calculations are at issue, the claims are typical.

E.      Adequacy

Rule 23(a)(4) involves two issues: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir. 2002) *(quoting Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)). To satisfy this prerequisite to class certification, Plaintiff must show that his interests are aligned with those of the persons he seeks to represent and that he will vigorously prosecute the class through qualified counsel. *Rutter*, 314 F.3d at 1187-88.  Plaintiff has no positions antagonistic to the class. A class representative is adequate as long as the class representative does not have a conflict which goes to the heart of the claims made by the class.  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

Class counsel must be appointed who will adequately represent the interests of the class. Fed. R. Civ. P. 23(c)(1)(B), (g)(1). The Court should consider the work counsel has done in identifying or investigating potential claims, counsel's experience in handling class actions in general and of the type asserted in this case, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(C). Plaintiff's counsel has handled many class actions in the past, including some involving these precise issues. They have expended substantial time and effort in identifying and proving claims. They will prosecute these claims to the end. Class counsel has been previously appointed lead class counsel in numerous federal and state court class actions. Should adequacy of Plaintiff's counsel become an issue, counsel will submit affidavits on the class cases in which they have been involved. Plaintiff's counsel is more than adequate and should be appointed as class counsel.

## II.    CLASS CERTIFICATION IS PROPER UNDER RULE 23(b)(3)

Once the requirements of Rule 23(a) have been satisfied, the Court must consider the type of class under Rule 23(b) that should be certified.

> To certify a class under Rule 23(b)(3), the court must find that common questions "predominate over questions affecting only individual members" and that the class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3); *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997).

*Payson*, 2008 WL 4642639 at *5. Here, predominance and superiority are met.

### A.    Predominance

First, "individualized issues" are issues that require individual class member testimony so that a representative class case does not present any case efficiencies.

> If the proposed class members will need to present evidence that varies from member to member in order to make out a prima facie case, then it is an

20

> individual question. … If, on the other hand, the same evidence will suffice for each member to make out a prima facie case, then it is a common question.

*Payson*, 2008 WL 4642639 at *5 (quoting *Urethane*, 2008 WL 4210780 at *5).  Here, liability will be proven by common evidence, not by the testimony of class members.  Indeed, the case will turn primarily on a legal issues, as it did in *Payson*, and the expert evidence presented on when the gas and constituent parts are in marketable condition, the legal issue of whether there is any severance tax owning on helium, and the legal issue of whether Conservation Fee may be deducted from royalty payments.   Moreover, Defendant keeps computerized records that it uses to calculate royalty payments for all class members on a monthly basis and contracts and accounting records, even if not computerized, from which production volumes and amounts of royalty reductions can be calculated.   This case challenges the propriety of reductions of royalty payments due to uniform practices of deducting or reducing royalties for processing, gathering, compression, and other charges or volume reductions, and for deductions of royalty payments due to royalty percentage share of the Conservation Fee and of the Severance Tax on Helium.  Once the Court determines whether these methods are proper or improper, royalties for each class member can be calculated using data already in Defendant's possession.

Second, predominance requires that the proposed class be "sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).   Here, the royalty owners have all suffered the same type of reductions in their royalty payments due to practices and policies of Exxon that are either right or wrong for the same reasons.  Predominance is easily satisfied.

B.      Superiority

"Finally, plaintiffs must show that a class action is the superior method of resolving

the claims to insure that there is no other available method of handling the litigation

which would have greater practical advantage." *Payson*, 2008 WL 4642639 at \*5.  There

is no other way to resolve this dispute for all class members.  Adjudication as a class

action is clearly preferable to thousands of individual cases raising the same issues.

Moreover, the small size of the typical class member's claim means that, absent a class

action, the claims will not be adjudicated at all, allowing a miscarriage of justice based

solely on the disproportionate wealth of the parties.

III.    **CERTIFICATION IS SUPPORTED BY CLASS CERTIFICATION IN A
        RELATED CASE**

A class that covers most of the same wells, but which does not make claims about

Conservation Fee, Severance Tax on Helium, or any claims regarding reductions of

royalty after the gathering lines, has been certified in state court and is on appeal before

the Kansas Court of Appeals.  *See*, *Farrar, supra,* Sharp Aff. Ex. B.  Under applicable

Kansas law, this is on point precedent and perhaps collateral estoppel.   As the Kansas

Supreme Court recently held in *Rhoten v. Dickson,* 223 P.3d 786, Syl.4 (Kan. 2010),"[a]

pending appeal does not suspend the finality of a judgment for claim preclusion

purposes."  At the very least, *Farrar* is compelling precedent in this case on class

certification.

## IV.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL UNDER RULE 26.

Rule 26(g) requires this Court to appoint class counsel at the same time that it certifies the class.  The undoubted qualifications of Plaintiff's counsel are recited above. Plaintiff's counsel should be appointed class counsel.

## V.   CONCLUSION

Class certification requirements should be liberally construed.  When in doubt, a class should be certified.  *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968) ("If there is error to be made, let it be in favor and not against the maintenance of a class action"), *cert. denied*, 394 U.S. 928 (1969); *Heartland Commc'ns, Inc. v. Sprint Corp.,* 161 F.R.D. 111, 118 (D. Kan. 1995).

Thus, Plaintiff prays that the Court certify the Class, appoint Plaintiff Hershey as class representative, and Plaintiff's counsel as Class Counsel.

Respectfully submitted,

/s/ Rex A. Sharp
Rex A. Sharp KBA#12350
Barbara C. Frankland KBA#14198
Gunderson, Sharp & Walke, L.L.P.
5301 W. 75th Street
Prairie Village, KS  66208
(913) 901-0500
(913) 901-0419 fax
rsharp@midwest-law.com

David E. Sharp KBA#10624
Gunderson Sharp & Walke, LLP
700 Louisiana, Suite 2300
Houston, TX 77002
(713) 221-2337
(713) 583-5448 fax
dsharp@midwest-law.com

Joseph Gunderson (admitted *pro hac vice*)
Gunderson Sharp & Walke, LLP
317 Sixth Avenue, Ste. 600
Des Moines, IA 50309
(515) 288-0219
(515) 288-0328 fax
jgunderson@midwest-law.com

Attorneys for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that, on March 12, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following: chalmers@hitefanning.com, briane@bbwcdf.com, plochridge@mcginnislaw.com, and sratliff@ratlifflaw.com.

/s/ Rex A. Sharp