IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JIMMIE HERSHEY, Individually &
on behalf of others similarly situated,
           Plaintiff,
    v.                                      Case No: 6:07-cv-1300-JTM-KMH

EXXONMOBIL OIL CORPORATION,
           Defendant.

## SETTLEMENT AGREEMENT AND RELEASE

      This Settlement Agreement and Release dated as of August _____, 2012, is entered into by and among the following Settling Parties: (i) the Class Representative (as defined below), acting individually and on behalf of the Class (as defined below) and (ii) ExxonMobil (as defined below) by and through their duly-authorized counsel.

**1.**    **RECITALS, BACKGROUND AND PURPOSE OF AGREEMENT**

      **Section 1.1.  Nature of the Dispute.**

      The certified Plaintiff Class and ExxonMobil are parties to *Jimmie Hershey vs. ExxonMobil Oil Corporation, Civil Action No. 6:07-cv-1300-JTM-KMH* pending on the docket in the United States District Court for the District of Kansas, Wichita Division.  This case is one of many cases over time raising disputes over the computation and payment of gas royalties under leases situated in Kansas.   Lessors and Lessees, including Jimmie Hershey and ExxonMobil, have been unable to reach common understandings about all aspects of royalty calculations under the language of leases, and these various disputes have ensued for many years. Virtually every substantial producer has been sued in class action litigation, often repeatedly, in lawsuits that involve the same lease provisions. This litigation has aided little in comprehensively resolving questions concerning the payment of royalties. The Parties continue

1

to disagree as to what the law requires and continue to face uncertainty as to their rights and duties. Even rulings by the trial court could be expected to result in years of appellate litigation and, depending upon appellate resolutions, further contested litigation in the trial court. The compromise and settlement expressed in this Agreement is intended to comprehensively address the claims of Class Members regarding the calculation of royalties in the past, and to clarify and prescribe a fair and definite standard for payment of Royalties in the future.

There is also pending a case entitled *Joy Lenz, et al., vs. ExxonMobil Oil Corporation*, Case No. 2008-CV-37 in the District Court of Stevens County, Kansas. The members of that putative class are represented by Class Counsel in this case and are all members of the *Class* in the Settled Case. The *Lenz* case involves claims for payment of royalties on helium on gas that was once processed at the Bushton Plant and later processed at the National Helium Plant during a period of time beginning in 2000 when helium royalty payments ceased. This Agreement will settle and dispose of that case as well. The Parties agree that the discovery, prosecution, and investigation undertaken in the *Lenz* case were valuable for Plaintiff Class's prosecution of this Settled Case; the Parties in this case have agreed that the discovery from the *Lenz* case could be used in this case.

Jimmie Hershey and the Class in the Amended Class Action Complaint generally assert that ExxonMobil underpaid royalties under Kansas leases. The Class alleges that ExxonMobil shared with royalty owners or deducted in computing royalty values certain expenses (as money and as reflected by volume reductions) incurred downstream of the well. The Class also contends that the leases give rise to an implied covenant requiring Exxon Mobil to make gas into marketable products at its expense and that gas and the constituent products of the gas stream are not marketable until: (1) residue gas is in the condition that it meets quality specifications of the

interstate pipelines, (2) natural gas liquids have been fractionated into NGL products such as ethane, propane, normal butane, iso-butane, and natural gasoline, and (3) helium has been processed into Grade A helium. The Class also contends that ExxonMobil has paid royalties in a manner inconsistent with the 1984 Agreement resolving several class action cases and amending the leases involved in and subject to that settlement; that ExxonMobil used the wrong beginning prices in paying royalties on Helium by paying royalties on the contract prices for the sale of crude Helium; and, that Exxon improperly deducted the fee imposed by the State of Kansas pursuant to KSA 55-176 (hereafter "Conservation Fees.")

ExxonMobil denies any liability or breaches of any obligations, and has already repaid the Conservation Fees deducted from royalties for the period of January, 2002 to July 2011 with interest, in a total amount in excess of $800,000.00. ExxonMobil contends that the express language of the leases under which it pays royalties provide for calculation of royalties based upon the value gas has at the wellhead and that gas is a marketable product at that point as evidenced by the fact that trillions of cubic feet of gas have been sold at just that location for more than eight decades in Kansas and for other reasons. ExxonMobil also claims that although the specific leases in Kansas do not require ExxonMobil to share the enhanced value obtained for any separately manufactured products obtained through ExxonMobil's investment and effort, ExxonMobil has nevertheless shared the enhanced value of those products with the royalty owners who should therefore fairly bear a proportionate share of the costs. ExxonMobil further asserts it has used fair prices for the sale of the products it obtains from gas, including helium and residue gas. Exxon Mobil has asserted various defenses to the Class's claims and denied that the case can be tried as a class action.

**Section 1.2.  Class Certification Order.**

Hershey sought and the Court certified a litigation class of plaintiffs encompassing all royalty owners under all ExxonMobil-owned leases in Kansas from which wells have produced gas from January 1, 1988 to March 31, 2011. Notice approved by the Court was provided to persons encompassed by the defined Class and the time for requesting exclusion from the Class expired.

### Section 1.3.  Objective of the Settlement.

The Settlement expressed in this Agreement is intended to comprehensively resolve disputed claims regarding the payment of Royalties under Class Leases for ExxonMobil and the Class and to clarify the calculation and payment of Royalties in the future.  It is intended to include all of the Royalty Rights and interests for all of the persons who claim and who have claimed those Royalty Rights and interests for production from Class Wells from January 1, 1988 to the date this Settlement becomes Final.

The Settlement and the Settlement Agreement are the result of a thorough analysis by the parties of the claims, defenses, and matters disputed in the Litigation and extensive negotiations in good faith pursued between Class Counsel and ExxonMobil's attorneys both with and without a mediator, taking into consideration the inherent uncertainty of a resolution of issues through a trial and the additional uncertainty of the outcome of potential appellate review of issues arising at trial or otherwise and interlocutory rulings previously entered by the Court, the uncertainty inherent in possible future legislation, as well as the additional passage of time and expense of continued litigation.

ExxonMobil vigorously contests and continues to deny each and all of the claims and contentions alleged by the Class, which ExxonMobil asserts are without merit. ExxonMobil vigorously denies any alleged violation of law or regulation, breach of any agreement or duty, or

4

that ExxonMobil is in any way liable, and ExxonMobil believes the evidence developed to date does not support the claims asserted. Nevertheless, ExxonMobil has entered into this Settlement solely because ExxonMobil believes it will avoid the further and substantial expense, burden, inefficiencies, and inconvenience of continued litigation and will resolve issues about how to properly calculate Royalties in the future. ExxonMobil has, therefore, determined that it is desirable and beneficial that the Litigation be resolved in the manner and upon the terms and conditions set forth in this Agreement.

The Parties understand and agree that this Agreement is subject to the approval by the Court and that upon approval by the Court, will constitute a binding compromise of disputed claims from the inception of ExxonMobil's title interest in the Class Leases with respect to all Class Members regardless of when or for what time period such persons claimed a right to any Royalty Rights or interest in any such lease. By entering into this Agreement, none of the parties shall be deemed to have conceded his, her, or its respective positions on any claim, defense or contention previously made or that a litigant class may or may not be certified under applicable law or to have admitted any wrongdoing or liability whatsoever. If the Settlement is not approved by the Court, it is intended that this Agreement will not be admitted into evidence for any purpose and it will be treated as if it never existed except as expressly provided herein regarding certain costs and expenses and resetting of deadlines.

2.      **DEFINITIONS**

For purposes of this Agreement, the following terms have the meaning set out below:

2.1.    "Administration Fund" shall mean the Administration Expense Reimbursement in addition to amounts that are set aside out of the Settlement Fund, as provided in section 9.2(c) below, for costs reasonably incurred for the approval, implementation and administration of this

Settlement, including without limitation the costs to prepare, distribute, and publish any notices as the Court may direct, and such other amounts as are reasonably required by the Settlement Administrator and/or Notice Administrator to perform their responsibilities, all as defined in this Agreement and approved for such uses by the Court.

2.2.   "Administration Expense Reimbursement" means the amount (not to exceed the total sum of $200,000.00) to be reimbursed by ExxonMobil for expenses approved by the Court in relation to the giving of Notice and other administration matters and to be paid as provided in Section 3.1(b) of this Agreement.

2.3.   "Affiliate" means a person, company, partnership or other entity which owns and controls or is owned and controlled by a Party. "Control" means, the possession, directly or indirectly, of the power to direct or cause the direction of the actions of a person or the management and policies of a company, partnership or other entity, whether through the ownership of voting rights, by contract, or otherwise. "Own" means the ownership, directly or indirectly, of more than fifty percent (50%) of a property interest in an asset, company, partnership or other entity.

2.4.   "Arm's-Length Sale" means any sale, exchange, or other disposition other than a sale, exchange, or other disposition to an ExxonMobil Affiliate.

2.5.   "Agreement" means this Settlement Agreement and Release.

2.6.   "Bushton Gathering System," for the purpose of this Agreement means and includes the network of facilities and pipelines situated in Seward, Stevens, Morton, Haskell, Grant, Stanton, Finney, Kearney and Hamilton Counties, Kansas to which wells on any Class Lease are connected, other than wells on Class Leases that are connected to the Hickok Gathering System. The Bushton Gathering System is currently owned by OneOk.

**2.7.** "Class" shall mean: All royalty owners of ExxonMobil Oil Corporation (including predecessors, successors, and Affiliates) from Kansas wells that have produced gas and/or gas constituents (such as residue gas or methane, natural gas liquids, helium, nitrogen, or condensate) from January 1, 1988 to March 31, 2011.

Excluded from the Class are: (1) the Mineral Management Service (Indian tribes and the United States); (2) Defendant, its affiliates, predecessors, and employees, officers and directors; and (3) Any NYSE or NASDAQ listed company (and its subsidiaries) engaged in oil and gas exploration, gathering, processing or marketing.

**2.8.** "Class Counsel" shall mean and include, collectively and individually, and in every capacity in the Settled Case, Gunderson, Sharp & Walke, LLP and all of its partners, attorneys and other agents, including without limitation:

> Rex A. Sharp
> Barbara C. Frankland
> Gunderson Sharp & Walke, LLP - PV
> 5301 W. 75th St.
> Prairie Village, KS 66208
> 913-901-0505
> Fax: 913-901-0419
>
> David E. Sharp
> Gunderson Sharp & Walke, LLP - Houston
> 712 Main Street, Suite 1400
> Houston, TX 77002-3201
> 713-490-3822
> Fax: 713-583-5448
>
> Joseph R. Gunderson
> Gunderson Sharp & Walke, LLP - IA
> 321 East Walnut St., Suite 300
> PO Box 6010
> Des Moines, IA 50309
> 515-288-0219
> Fax: 515-288-0328

**2.9.** "Class Leases" shall mean each and all of the leases covering lands situated within the state of Kansas on which Class Wells are or were located, including any modifications or amendments entered into before the date of the Judgment. ExxonMobil has used reasonable efforts to comprehensively identify such Class Leases in the schedule attached as Exhibit "A" to this Agreement, incorporated here for identification and not as a limitation. In the event ExxonMobil and Class Counsel inadvertently omit a lease from the schedule, that lease shall nevertheless be a Class Lease covered by and included in the Settlement.

**2.10.** "Class Members" and each "Class Member" shall mean and include, respectively, each of those persons, and all of them, included within the definition of the Class, who has not submitted before the date established by the Court and set forth in the Notice a valid Request for Exclusion.

**2.11.** "Class Representative" shall mean Jimmie Hershey.

**2.12** "Class Wells" shall mean all wells in the State of Kansas that ExxonMobil owns or has owned (in whole or in part) that have produced gas and/or gas constituents (such as residue gas or methane, natural gas liquids, helium, nitrogen, or condensate) at any time between January 1, 1988 to the present, including all wells which may be drilled on Class Leases in the future.

**2.13.** "Compensation Fund" shall mean such amounts set aside from the Settlement Fund, as provided in Section 9.2 below, for compensation of the Class Representative and such others as deemed appropriate for their contribution of time, expenses, efforts, etc. in the prosecution of the Settled Case, as approved by the Court.

**2.14.** "Court" shall mean the United States District Court for the District of Kansas.

**2.15.** "Current Royalty Owner" shall mean and include each Class Member who on the date of the Judgment is the owner of all or any fraction of the Royalty Rights under any Class Lease or other instrument conveying Royalty Rights in a Class Lease, and his, her or its, heirs, assigns, legatees, devisees and other successors in interest.

**2.16.** "Distribution Check" means a check payable to a Class Member representing payment to the Class Member of a share of the Net Settlement Fund payable to such Class Member pursuant to the Plan of Allocation approved by the Court, upon which is inscribed the release and ratification in the form set forth in Exhibit "B".

**2.17.** "Distribution Date" means the date on which the Distribution Checks are first mailed to Class Members. For the purpose of this Agreement, a Distribution Check shall be considered mailed when it is tendered to the U.S. Postal Service or other courier addressed to the Class Member at the address last known to the Parties.

**2.18.** "Distribution List" shall mean the list of Class Members to whom payments from the Net Settlement Funds are to be made provided to Class Counsel by ExxonMobil for mailing to the Class.

**2.19.** "Excluded Person" means any person who the Court determines has submitted a timely request to opt out from the Class containing the information required by the Notice and any person who pursuant to an Order of the Court is permitted to be excluded from the Class before the Judgment becomes Final.

**2.20.** "ExxonMobil" shall mean and include ExxonMobil  Corporation, and all of its parents (including Exxon Mobil Corporation) their subsidiaries and Affiliates, past, present, and future, including but not limited to, Exxon Mobil Inc., Mobil Oil Corporation, ExxonMobil Oil Corporation, Mobil Producing Texas & New Mexico, Inc., Mobil Exploration and Producing,

U.S., Mobil Natural Gas Inc., Mobil Exploration and Producing, North America and all of their

subsidiaries and Affiliates, as their interests may appear.

    **2.21**   "ExxonMobil's Counsel" shall mean and include:

        Patton G. Lochridge
        McGinnis, Lochridge & Kilgore, LLP
        600 Congress Ave.
        Suite 2100
        Austin, Texas 78701

        and

        Shannon H. Ratliff
        The Ratliff Law Firm, PLLC
        600 Congress Ave.
        Suite 3100
        Austin, Texas 78701

        and

        Arthur Chalmers
        Hite, Fanning & Honeyman, LLP
        100 N. Broadway
        Suite 950
        Wichita, KS 67202

    **2.22.**   "ExxonMobil Releasees" shall mean, collectively and individually, ExxonMobil,

its Affiliates, its current and former parent companies, their respective current and former sister

companies, their respective current and former affiliated companies, their respective current and

former subsidiary companies, and their respective predecessors, successors, successors in

interest, assigns, operating divisions, officers, directors, employees, managers, attorneys, agents,

general partners, limited partners, shareholders, investors, joint venturers, attorneys, and insurers.

Without limiting the foregoing in any way, the term "ExxonMobil Releasees" shall mean and

include Exxon Mobil Corporation, ExxonMobil Oil Corporation, Mobil Oil Corporation, Mobil

Producing Texas & New Mexico, Inc., Mobil Exploration and Producing, U.S., Mobil Natural

Gas Inc., Mobil Exploration and Producing, North America, and any of their past, present, or future subsidiaries and Affiliates. The term "ExxonMobil Releases" shall not include any unrelated third party to whom a working interest in any Class Lease or Class Well has been assigned by ExxonMobil.

    **2.23**   "Final," as used in this Agreement, shall have the following meanings, depending on the context described below in which the term "Final" is employed in this Agreement.

    **2.23.1.** When used with reference to a judgment, including the Judgment, the term "Final" shall mean the following:

    (a)    If no appeal is taken from the Judgment, Final shall mean the expiration of the time for the filing or noticing any appeal from the Judgment.

    (b)    If an appeal is taken from the Judgment and either the Judgment appealed is affirmed in full or the appeal is dismissed, the earlier of the following, whichever applies: (i) the expiration of the time for filing a petition for writ of certiorari, if no petition is filed; (ii) the expiration of the time for rehearing of the denial or dismissal of such a petition for writ of certiorari; or (iii) the expiration of the time for seeking rehearing of the Supreme Court's affirmance of such affirmance or dismissal.

    (c)    If an appeal is taken from the Judgment and that appeal does not concern an attack on the portion of the Judgment concerning the Parties obligations in regard to future royalties as set forth in Section 4 of this Agreement, the Judgment shall be Final in regard to the obligations in Section 4 ten (10) days after all appellant's briefs in any appeal are filed.

2.23.2.  When used with reference to the Settlement or this Agreement, the term "Final" shall mean the time at which the Judgment is Final.

2.23.3. No filing of any motion or original proceeding in any court under or described in Federal Rule of Civil Procedure 60 or any similar state rule shall operate to stay or delay this Settlement or Agreement from becoming Final.

2.24.  "Fuel" means and includes all Gas, or the value thereof, or fees in lieu thereof, produced from Class Wells and Class Leases that is used, lost, unaccounted for, or otherwise expended in connection with operating and maintaining facilities and equipment that in any way gathers, transports, compresses, dehydrates, processes, treats, moves and/or fractionates Gas, including facilities and equipment connected to the Bushton Gathering System and the Hickok Gathering System.

2.25.  "Gas" shall mean the entire raw gas stream as extracted from a reservoir at the casing head, including each and all of its combustible and noncombustible components, constituent elements or compounds.   Without in any way limiting the generality or comprehensive scope of the foregoing, Gas includes without reservation flammable natural gas, natural gas liquids, casinghead gas, residue gas, condensate, natural gasoline, gasoline, water vapor, hydrogen, nitrogen, carbon dioxide, helium, and any other gaseous substance contained in the raw gas as it emerges from the earth. "Gas" does not include crude oil.

2.26.  "Gas Plant Products" shall mean and include the individual constituent components when extracted from Gas, from time to time at any location (not limited to a plant) that are commercially sold or used in-kind by ExxonMobil (including by exchange transactions) including but not limited to residue gas, natural gas liquids (as raw make or when fractionated as separate products) nitrogen, helium, condensate, and noble gases.

**2.27.** "Gathering Fees and Expenses" means, and includes any fees payable in money (but not including Fuel) for the movement of Gas or other services performed from the wellhead of the well where severed from the earth to the following geographic points:

a.     For Gas gathered on the Bushton Gathering System, the inlet flange of the first facilities of the WTG Transmission Line.

b.     For Gas gathered on the Hickok Gathering System, the interconnection located at the outlet of the Hickok Compressor Station.

c.     For Gas produced from Other Kansas Class Wells, the nearer to the well of (i) the place in the field where physical custody and possession (regardless of title) of Gas transfers from the gathering line first connected to the well to facilities or pipe lines that take the Gas to a plant or (ii) the inlet flange of the first processing plant downstream of such well.

Without limiting the foregoing, it is understood that Gathering Fees and Expenses specifically includes any fee in money (but not Fuel) paid pursuant to that certain Gas Gathering Agreement between OneOk Gas Gathering, LLC and ExxonMobil covering certain operations occurring on the Bushton Gathering System [hereinafter "OneOk Agreement"] and any fee or amount in money (but not Fuel) paid or incurred on the Hickok Gathering System

**2.28.** "Helium Settlement Agreement" means that settlement agreement entered into by ExxonMobil in settlement of that case styled *ExxonMobil Oil Corporation vs. Enron Helium Company n/k/a OneOk Bushton Processing, Inc.*, Cause No. H-03-CV-5047, In the United States District Court for the Southern District of Texas, Houston Division.

**2.29.** "Hickok Compressor Station" means the compression station and compression facilities situated in Township 29S Range 35W in Grant County, Kansas, up to the inlet flange of the pipeline that runs between said compression facilities and the Jayhawk Plant situated in

Township 29S Range 35W in Grant County, Kansas or up to the inlet of a separate by-pass line in the same location through which Gas is directed to the Satanta or other plant. The Jayhawk Plant was owned and operated through at least 2011 by BP America Production Company or an Affiliate and has reportedly been sold to Linn Energy or an Affiliate in a transaction prior to the date of this Agreement. If the Hickok Compressor Station as it is currently configured ceases to operate at its current location and its function is performed by compressors at a different location, "the outlet" of the Hickok Compressor Station shall be deemed to be the outlet of the facility or facilities, whether one or more, performing the function currently served by the Hickok Compressor Station.

      **2.30.** "Hickok Gathering System" means the compression facilities and pipelines situated upstream of the outlet of the Hickok Compressor Station.

      **2.31.** "Judgment" shall mean the final judgment to be rendered and entered by the Court in the Settled Case, which shall approve this Settlement or any modification thereof agreed to by the Parties in writing or in open court, dismiss all claims against ExxonMobil with prejudice, enjoin Class Members from prosecuting Released Claims, satisfy Section 7.1, and provide that the Settlement, and the releases, and other terms are binding on the Class Members. The phrase "date of the Judgment" shall refer to and mean the date of entry of the Judgment.

      **2.32.** "Litigation" means each and all disputed matters and claims raised or that could have been raised in any case, matter, suit, proceeding or action in any forum in any way concerning Royalties on Gas produced from Class Leases or Class Wells, including without limitation all matters described as Released Claims. Without limitation, "Litigation" specifically encompasses all facts, contentions, allegations, disputes, and other matters related to any of (a) the Settled Case, including any pending appeals, (b) *Joy Lenz, et al., vs. ExxonMobil Oil*

*Corporation*, Case No. 2008-CV-37, in the District Court of Stevens County, Kansas and (c) *Willie Jean Farrar, et al. vs. Mobil Oil Corporation*, Case No. 01-CV-12, in the Twenty-Sixth Judicial District Court, Stevens County, Kansas, including any pending appeals.

**2.33.** "Net Settlement Fund" shall mean the Settlement Fund reduced by: (a) all court-approved attorneys' fees and litigation expenses payable to Class Counsel; (b) the Compensation Fund, and (c) that portion of the Administration Fund in excess of the Administration Expense Reimbursement.

**2.34.** "Notice Administrator" shall mean a notice administrator appointed by the Court to perform services related to providing Notice to the Class.

**2.35.** "Notice of Preliminary Approval of Settlement, and Hearing" and "Notice" shall mean the notice provided for in Section 6 hereof, the proposed form of which is attached hereto as Exhibit "C".

**2.36.** "Opt-out Adjustment" means the amount of money, computed according to section 3.3 of this Agreement which shall be used to adjust the Total Settlement Payment to compute the amount of the Settlement Fund.

**2.37.** "Other Kansas Class Wells" means Class Wells not connected to the Bushton Gathering System or the Hickok Gathering System.

**2.38.** "Parties" shall mean, collectively and individually, Class Representative, the Class, and ExxonMobil.

**2.39.** "Plaintiffs" shall mean the Class, Class Representative, and Class Members.

**2.40.** Plan of Allocation means the plan prepared by Class Counsel described in Section 9 for allocation of the Settlement Fund and approved by the Court.

**2.41.** "Preliminary Approval Order" means the order(s) including at least the provisions set out in this paragraph in substantially the form as those attached hereto as Exhibit "D" granting preliminary approval of the Settlement, directing that Notice of the Settlement be provided to the Class Members, and enjoining or restraining the Class and other persons or entities acting in concert with them from initiating or continuing any Litigation except proceedings in this Court relating to the Settlement, and addressing notice to the Class and appropriate proceedings to consider the Settlement.

**2.42.** "Released Claims" shall mean and include, any and all causes of action, choses in action, demands, debts, obligations, duties, liens, liabilities, and theories of liability and recovery of whatsoever kind and nature, whether based in contract or tort, whether arising in equity or under the common law, whether by statute or regulation, whether known or unknown, whether asserted by the Class in the past, present, or future, whether contingent, prospective, or matured, whether for damages relief, injunctive relief, declaratory relief, equitable relief, or any other type of relief, whether for actual damages, liquidated damages, punitive damages, exemplary damages, compensatory damages, incidental damages, consequential damages, pecuniary damages, costs, expenses, attorneys' fees, penalties, or fines and interest in any form, statutory, equitable, contractual or other loss or harm of every kind and description that are, were, or could have been asserted in the Litigation and all such claims that accrue or could be asserted in the future that are in any way similar or related to issues raised or that could have been asserted in the Litigation that arise in whole or in any part from facts existing on the date the Judgment becomes Final, including but not limited to any such claims relating to any of the following: (a) the calculation or payment of Royalties to any Class Member; (b) the producing, marketing, sale, taking in-kind, exchanging, or any other dispositions of Gas and Gas Plant Products; (c) the sale,

pricing, or valuation of Gas and Gas Plant Products; (d) the gathering, compressing, dehydrating, transportation, treatment, processing, or marketing of Gas and Gas Plant Products produced from Class Wells drilled on Class Leases at any time, and any and all costs, expenses, charges, deductions, Fuel, liabilities, accounting practices, and calculations associated with same; (e) the facts asserted in or underlying the Litigation; (f) the payment of Royalties under leases, assignments, settlement agreements (including the 1984 Agreement and the Helium Settlement Agreement), unit agreements, division orders, royalty contracts, operating agreements, amendments, and other instruments of every description under which Plaintiffs and Class Members hold or purport to hold their respective Royalty Rights; and (g) the administration of this Settlement, including any activities of or actions taken by the Settlement Administrator. Matters included within the Released Claims include, without limitation, any claim or contention that ExxonMobil (a), breached any lease, division order, royalty payment contract, settlement agreement (including the 1984 Agreement and the Helium Settlement Agreement), express or implied covenant, operating agreement and other contract alleged to affect the payment of Royalty, (b) paid Royalty based on a price or starting price that is too low for Gas, extracted helium, and any other Gas Plant Product, (c) failed to pay royalty under any Class Lease or other instrument on condensate, (d) failed to correctly report volumes, values, expenses, or charges on check stubs, (e) incorrectly deducted fees or taxes in computing and paying Royalties, (f) took any deductions in-kind (such as for Fuel) that were not authorized by law or any contracts, (g) failed to pay Royalty on the value of fractionated Gas Plant Products, (h) computed Royalties improperly by entering into percentage of proceeds contracts for the processing of Gas, (i) concealed any information from Class Members or that Class Members did not or could not have discovered alleged causes of action, (j) was unjustly enriched by not paying full Royalties, (k) is

estopped to assert any defense regarding Royalties, (l) is liable for an accounting on Royalties, (m) failed to extract or manufacture purity products including without limitation Grade A Helium, (n) engaged an Affiliate or used any transaction with an Affiliate to reduce the Royalties, (o) improperly deducted Conservation Fees, and (p) improperly deducted severance tax on helium. The "Released Claims" include, without limitation, any claims, whether accrued in the past or accruing in the future, based in whole or in any part on facts existing on the date the Judgment becomes Final that Class Representative, Class Counsel, and the Class Members, and any of them, do not know or suspect to exist in their favor at the time of the execution of this Agreement and that, if known, might have affected the Settlement, the releases set forth in this Agreement, or any other action including, but not limited to, the decision to participate in or object to the Settlement. The Released Claims do not include claims to the funds currently held by ExxonMobil in suspense. Suspense funds will be handled in the ordinary course of business as if there had been no Settlement. The Released Claims do not include claims against state agencies (as opposed to ExxonMobil) for reimbursement of severance taxes paid to such state agencies by ExxonMobil on behalf of Class Members.

**2.43.** "Royalty" and "Royalties" shall mean and include royalties on Gas.

**2.44.** "Royalty Rights" shall mean the Royalty interests and rights expressed in and arising under the Class Leases and any rights to be paid Royalties out of the Class Members' interest in a Class Lease.

**2.45.** "Settled Case" shall mean *Jimmie Hershey, individually and on behalf of all those similarly situated v. Exxon Mobil Oil Corp.*, No. 6:07-cv-1300-JTM-KMH, in the United States District Court for the District of Kansas, including any pending appeals.

2.46.    "Settling Parties" means, collectively, the Class Representative, the Class, the Class Members, and ExxonMobil.

2.47.    "Settlement" shall mean the terms and conditions of the settlement set forth in this Agreement.

2.48.    "Settlement Administrator" shall mean a settlement administrator to be appointed by the Court to perform certain services related to the administration of the Settlement as described hereinafter.

2.49.    "Settlement Fund" shall mean the amount of money equal to (a) the Total Cash Settlement Payment minus (b) an amount of money representing the Opt-Out Adjustment. The term "Settlement Fund" is used for convenience only and the Parties acknowledge that additional consideration is provided under the terms of this Agreement as a result of the provisions in Sections 3 and 4.

2.50.    "Total Cash Settlement Payment" means the total sum of FIFTY-FOUR MILLION DOLLARS in UNITED STATES DOLLARS ($54,000,000.00 USD). The Total Cash Settlement Payment, together with the Administrative Expense Reimbursement, represents the maximum total sum ever to be paid in cash by or for ExxonMobil in connection with the Settlement and for Class Lease modifications, payment division orders, releases, covenants and other rights and benefits in this Agreement.   The Total Cash Settlement Payment shall be reduced by the mandatory Opt-Out Adjustments computed in accordance with Sections 3.2 and 3.3 of this Agreement to create the Settlement Fund.

2.51.    "Total Settlement Amount" is the Total Cash Settlement Payment plus (a) the fair market value of ExxonMobil's agreement not to share or deduct Gathering Fees and Expenses, (b) the Conservation Fee amounts reimbursed as a result of this case, (c) the Conservation Fees

that will not be deducted in the future as a result of this case, and (d) the Administration Expense Reimbursement.

**2.52.** "Unclaimed Funds" shall mean the funds described in Section 9.10 of the Agreement.

**2.53.** "WTG Transmission Line" means all those pipelines, compressors, and other physical facilities and equipment that receive Gas from OneOk Field Services' Bushton Gathering System, in the configuration and location existing on the date the Court executes the Preliminary Approval Order.

**2.54.** "1984 Agreement" means that certain "Memorandum Agreement" dated May 24, 1984 by and among Mobil Oil Corporation and the members of the classes certified in the actions resolved by that agreement and their legal counsel in such cases described in paragraph 2 of said agreement and the affidavits filed in connection therewith.

**3.     CASH CONSIDERATION**

**Section 3.1.    Settlement Fund and Administration Expense Reimbursement.** As part of the consideration for this Settlement, ExxonMobil shall pay the following cash amounts:

(a)     The Settlement Fund, said amount to be deposited by wire transfer with the Settlement Administrator on or before the later of fifteen (15) business days after the Settlement becomes Final or the Settlement Administrator provides appropriate wiring instructions to ExxonMobil.

(b)     The Administration Expense Reimbursement, to be paid by wire transfer into a separate account set up by Class Counsel and approved by the Court in the amounts approved by the Court as reasonable administration expenses within fifteen (15) business days following the date the Court's order approving the Administrative Expense

Reimbursement, the total of such reimbursements never to exceed $200,000.00.   In the event ExxonMobil exercises its right to terminate this Agreement pursuant to Section 8.2(i) or 8.3 of this Agreement, administration expenses, including but not limited to, cost of Notice, approved by the Court shall be paid by ExxonMobil, in an amount not to exceed $200,000.00.   In the event this Agreement is terminated for any other reason, ExxonMobil will reimburse one-half of the administration expenses approved by the Court, in an amount not to exceed $100,000.00.

**Section 3.2.    Calculation of Settlement Fund.** The Total Cash Settlement Payment is intended to encompass one hundred percent (100%) of all the Royalty Rights and interests of persons within the Class. Certain persons may elect in accordance with the procedures set forth in this Agreement to be excluded from the Settlement and such persons will not be identified until after the time for requesting exclusions from the Class expires. Therefore, to reflect interests and Royalty Rights only of those persons who are Class Members, the Total Cash Settlement Payment shall be reduced by the Opt-out Adjustment, the resulting amount to comprise the Settlement Fund.

**Section 3.3.    Calculation of the Opt-out Adjustment.** An opt-out factor in dollars shall be calculated for each person and entity who timely returns a completed Request for Exclusion from the Class as follows:

(Total Cash Settlement Payment) x $(A_i/A_t)$ = opt-out factor.

Where:

- $A_i$ is the total amount of all Royalty payments made under the Class Leases to the Excluded Person for production occurring in 2011

- $A_t$ is the total of all Royalty payments made to all Class payees under Class Leases for production occurring in 2011.

The Opt-Out Adjustment is the sum in dollars of the opt-out factors for all Excluded Persons.

## 4.   FUTURE ROYALTIES AND ROYALTY RIGHTS

**Section 4.1.   Calculation and Payment of Future Royalties.** ExxonMobil and each Current Royalty Owner agree that from and after the first day of the first full production month following the date the Settlement becomes Final, the Class Leases shall and shall be deemed to expressly provide for the payment of Royalties for Gas (whenever paid, or required or permitted to be paid in money and not in-kind) in an amount equal to the Royalty Owner's Lease Decimal multiplied by the "Royalty Value" for Gas allocated to production from a Class Lease determined pursuant to Section 4.2. "Lease Decimal" means a Royalty Owner's fractional share of ownership in the production (net of Fuel) from a Class Lease according to the leases, division orders, and other instruments affecting title, as such interests are reflected from time to time on ExxonMobil's books and records.

**Section 4.2.   Determination of Royalty Value.**   Royalty Value for Gas volumes allocated to production from a Class Lease (net of Fuel) for any production month will be determined using a "net back" or "cost netting" method as described in this Section 4.2 and Section 4.6. Royalty Value shall be determined from cumulative amounts received by ExxonMobil  from the first Arm's-Length Sale(s) of such Gas and Gas Plant Products attributed to such Gas (if such Gas is processed to extract separate Gas Plant Products), less all reasonable fees (including in-kind fees, fees under percentage of proceeds and like processing arrangements), expenses and Fuel attributed to such Class Lease to transport, move, compress, dehydrate, gather, process, fractionate,  treat, store, and market the Gas and Gas Plant Products, subject to Section 4.7.

22

**Section 4.3.   Processing Elections.**      Any election or decision concerning whether to process Gas to extract Gas Plant Products or any particular Gas Plant Product shall be at ExxonMobil's sole discretion.

**Section 4.4.   Special Provision for Certain Wellhead Dispositions.**  Where Gas from any Class Lease gathered on the Hickok Gathering System or the Bushton Gathering System is sold at the wellhead under terms that require the purchaser to bear the fees and costs defined in this Agreement as Gathering Fees and Expenses, then in that event, if the amount realized from said wellhead sale is less than the Royalty Value determined under 4.1, 4.2, 4.6, and 4.7 for Gas and Gas Plant Products had there not been a wellhead sale, then ExxonMobil will pay the Royalty Owner as follows: the Royalty Owner's decimal interest of the amount realized from the wellhead sale plus the Royalty Owner's decimal interest of the difference between the amount realized from the wellhead sale and the Royalty Value of the Gas and Gas Plant Products determined under 4.1, 4.2, 4.6, and 4.7 had there not been a wellhead sale, but said difference shall never exceed the Royalty Owner's decimal interest of $0.364 per MMBtu for said Gas from said Class Lease.

**Section 4.5.   Reasonable Expenses.**  Expenses (i.e. fees, expenses and Fuel listed in Section 4.2) shall be deemed reasonable if such expenses are incurred pursuant to an Arm's-Length Sale(s) or if incurred in a transaction that is not an Arm's-Length Sale, then they shall be deemed reasonable provided they are comparable to the expenses ExxonMobil pays for similar services or goods in the area under Arm's-Length Sales transactions.

**Section 4.6.   Exchanges, Deliveries In-Kind, and Other Dispositions.**  For  purposes of computing Royalty Value of Gas and Gas Plant Products allocated to production from a Class Lease, the amount received for of such Gas  and Gas Plant Products that is transacted in an

exchange, delivery in-kind (not including Fuel) or other similar disposition this Section 4.6 shall apply:

a.　　　For such Gas and Gas Plant Products transacted in an Arm's-Length Sale, the amount received shall be deemed to be the amounts determined according to the Arm's-Length Sale (or exchange) agreement; or if no value is provided in such Arm's-Length Sale (or exchange) agreement, then an amount equivalent to the amount that ExxonMobil could have received for equivalent Gas and Gas Plant Products sold in an Arms-Length Sale at the place or plant nearest to the Class Well to which such Gas and Gas Plant Products are allocated, net of amounts for the fees and expenses incurred or that would have been incurred and that are described in Section 4.2.

b.　　　For such Gas and Gas Plant Products exchanged, delivered in-kind (but not including Fuel), sold or otherwise disposed of to an Affiliate then the "amount received" attributed to such volumes so exchanged, delivered or sold shall be equivalent to the amount that ExxonMobil could have received for equivalent Gas Plant Products (whether or not actually manufactured) if sold in an Arms-Length Sale at the place or plant nearest to the Class Well to which such Gas Plant Products are allocated, net of amounts for the fees and expenses incurred or that would have been incurred and that are described in Section 4.2.

c.　　　For such Gas and Gas Plant Products transacted through an exchange, delivery in-kind or like arrangement, (i) to an Affiliate or (ii) where there

is no specific provision for determining such amounts in an Arms-Length Sale agreement, then the amount received will be computed by imputing first-of-month prices from published indexes (e.g., OPIS, Inside F.E.R.C., Gas Daily, etc.) which shall be deemed reasonable provided the index rates or prices applied are for equivalent products transacted at points nearest the place of production or manufacture.

**Section 4.7.    Certain Expenses Not Deducted or Shared.**   In computing the Royalty Value for Gas and Gas Plant Products allocated to Class Wells and Class Leases, ExxonMobil shall not share or deduct (a) Gathering Fees and Expenses, and (b) Conservation Fees currently imposed only on an operator pursuant to K.S.A. 55-176(a), unless expressly authorized by subsequent statutory amendment and any implementing regulation of the Kansas Corporation Commission.

**Section 4.8.    Severance and Other Taxes.**       In computing and paying Royalties to Class Members, ExxonMobil shall deduct, in the same manner as in the past, any severance or other taxes, by whatever name, imposed by law upon all the mineral owners, including taxes imposed upon produced Gas,  that are remitted directly to the taxing authority by ExxonMobil. Class Members shall pay and be liable for the share of taxes attributable to their respective interests.  ExxonMobil will adhere to any changes or clarifications of the severance or other tax law by statute, court decision, or administrative regulation so as to cease deducting any severance or other taxes that are not owed or determined to not be owing by Class Members.

**Section 4.9.    Leases and Other Instruments Modified to Conform to this Agreement.**  Each Current Royalty Owner stipulates and agrees that for the consideration recited and paid under this Agreement, this Agreement constitutes an express contract and

covenant that amends and modifies the Royalty Rights and Class Leases, and excludes the existence or claimed existence of any implied covenant to the extent such implied covenant would require Royalties to be computed and paid on Gas on a different basis than set out in this Agreement.

Section 4.10. **Recordable Memorandum of Amendment.**    ExxonMobil    may record in the official public records in the manner provided by law a memorandum of this amendment and modification with respect to any and every Class Lease and may in its discretion record the Judgment so that it appears in the chain of title records for each Class Lease.

Section 4.11. **Contract for Future Payments.**    In addition to the amendment and modification of Class Leases, this Agreement shall constitute a binding contract expressly setting forth the manner in which Royalties will be calculated and paid in the future for Gas severed from the earth by Class Wells under Class Leases. This Agreement may not be modified or revoked by any future division order or by any other means except by a separate writing expressly referencing this Section 4, executed by both ExxonMobil and each Royalty Owner to be affected thereby, and supported by adequate legal consideration. Each Class Member who receives Royalties in the future, and each of their successors in interests, shall be deemed to have accepted Royalties paid according to this Agreement in full satisfaction for Royalties owed on Gas severed from the earth to which the Royalty payment is attributable.

Section 4.12. **ExxonMobil's Interest.**    This Settlement relates and extends only to ExxonMobil's undivided ownership interest in the Class Leases. Therefore, in the event a percentage portion of a Class Lease and the lessee's interest thereunder was acquired by and assigned to ExxonMobil and the remaining percentage portion thereof was acquired by and assigned to a third party(ies) (i.e., a person or entity other than ExxonMobil), then this

Settlement shall apply and be deemed to apply only to ExxonMobil's percentage portion of the Class Lease, and shall not apply or be deemed to apply to the third party's (or third parties') percentage portion of the Class Lease.  The Settlement does not apply to any obligation of a third party to pay royalties for its own working interest share. Nothing in this Settlement Agreement shall release or absolve any such third party from any obligations that it would otherwise have or modify any such obligations in any way.

**4.13.   Class Leases and Other Instruments Remain In Full Force and Effect as Modified.**      Except as expressly modified in this Agreement, the Class Leases and other instruments, if any, affecting Royalty Rights of the Class Members shall remain in full force and effect, and this Agreement shall not be deemed to otherwise amend the Class Leases of Class Members.

**Section 4.14.  Ownership Decimals Unaffected.**   The provisions of this Agreement do not alter or amend the fractional share of ownership (*i.e.*, decimal interest) in Royalty Rights held by any Class Member as warranted to ExxonMobil in division orders previously executed or effect any conveyance or transfer of Royalty Rights from one person to another.  ExxonMobil may continue to rely upon the statement of such interests in distributing Royalties in the same manner in which it has in the past and nothing in this Agreement shall require ExxonMobil to obtain new division orders from any Class Member as a condition to distributing Royalties computed as provided in this Agreement.  No division order or transfer order executed in the future shall affect the provisions of this Section 4 prescribing the manner for calculation and payment of Royalties absent an express agreement signed by both the then Current Royalty Owner and ExxonMobil expressly referring to this Section 4 and supported by adequate legal consideration, and all the provisions of this Section 4 shall be deemed a part of and controlling

with respect to any such division or transfer order.

**Section 4.15.  Acceptance and Ratification.**    Each Current Royalty Owner shall be deemed by operation of the Judgment to have accepted and ratified this Agreement and their respective Class Leases. The endorsement, transfer, or presentment for payment of any Distribution Check shall be deemed to be, and effective as, an execution of this Agreement just as if inscribed directly upon this Agreement.

**Section 4.16.  Reliance by ExxonMobil.**    It is understood and agreed that ExxonMobil would not have entered this Agreement or provided the Settlement Fund under the Agreement without obtaining the provisions herein which clarify the manner in which Royalties will be calculated in the future. The Settlement Fund provides consideration for both the release of past claims and the right to pay Royalties in the future in the manner provided in this Agreement.

**Section 4.17.  Successor Royalty Owners and Interests Bound.**    The    specific agreements and covenants contained herein concerning the Royalty Rights and the future calculation and payment of Royalties touch and concern and run with the land.  Each Current Royalty Owner agrees that this Agreement shall be binding and be effective against each and all of such Current Royalty Owner's assigns, heirs, legatees, devisees, and other successors in interest.

## 5.  RELEASES AND COVENANTS NOT TO SUE

**Section 5.1.  ExxonMobil Releasees Released.**   Upon the Settlement and Judgment becoming Final, and for the consideration provided for in this Agreement, each Class Member shall be conclusively deemed to have and by operation of the Judgment adjudged to have fully, finally, and forever released, relinquished, and discharged the ExxonMobil Releasees, and each of them, from any and all liability on or for any and all of the Released Claims. The Class

Representative and each Class Member agrees that the release embodied herein is a general release of the Released Claims and shall be interpreted, construed and enforced as a general release of the Released Claims. The Class Representative and each Class Member acknowledges and agrees that this release is a full, final, and complete release of the matters and things described herein, and each Class Member expressly waives and assumes the risk that there may be claims, demands, damages (whether actual or punitive), debts, liabilities, accounts, or causes of action being released by such Class Member of which such Class Member is unaware. Each Class Member also acknowledges and agrees that he, she, or it is concluding the Litigation, and accepting their share of the Settlement Fund and other consideration described herein, as a full, final, and complete compromise and settlement of claims and controversies which involve issues of law and fact, and expressly waives and assumes the risk that the facts or law may be other than what the Class Member believes them to be.

**Section 5.2. Covenant Not to Sue.** Upon the Settlement becoming Final and for the consideration provided for herein, Class Members, and all and each of them, agree and covenant, that, in addition to the foregoing releases, each Class Member further agrees and covenants that such Class Member shall not, at any time, directly or indirectly, on the Class Member's own behalf or by or through others, sue, instigate, institute, or assert against ExxonMobil Releasees, or any of them, any claims or actions on or concerning the Released Claims based in whole or in any part on facts existing on or before the date the Court signs the Judgment, and agree and acknowledge that this covenant not to sue shall apply and have effect by virtue of this Agreement and by operation of the Judgment. Each Class Member, and Class Counsel further agree and acknowledge that the covenants not to sue provided for in this section are made to inure to the

benefit of, and are specifically enforceable by, each entity and individual encompassed within the ExxonMobil Releasees.

    **5.3.**    **Hold Class Harmless**.  Any Class Member wishing to remain a Class Member, but objecting to any part of the Settlement can do so only as set forth in the Class Notice attached as Exhibit "C".  Because any appeal by an objecting Class Member would delay the payment under the Settlement, each Class Member that appeals agrees to put up a cash bond to be set by the district court sufficient to reimburse Class Counsel's appellate fees, Class Counsel's expenses, and the lost interest to the Class caused by the delay.

    **Section 5.4.**    **Ratification by Endorsement or Presentment.**    As a condition precedent to any Class Representative or any Class Member receiving payment or other consideration under or pursuant to this Settlement, each such Class Representative or Class Member shall individually execute a release and covenant not to sue to be inscribed on the Distribution Checks in the form attached hereto as Exhibit "B" expressly referencing and ratifying, accepting, and agreeing to all of the provisions of this Agreement, including, without limitation, the releases in this section 5 and the agreements concerning the payment of Royalties and amendments and modifications to Class Leases in Section 4. A copy of each executed release and covenant appearing on the checks shall be provided by the Settlement Administrator to Class Counsel and ExxonMobil's Counsel.  Notwithstanding the other provisions of this paragraph, upon entry of the Judgment, the Class Members and each of them, by operation of the Judgment shall be adjudged and deemed to have, fully, finally, and forever released, relinquished and discharged as set forth in this Agreement, all Released Claims  against the ExxonMobil Releasees, and ratified, agreed to and accepted the provisions of Section 4 of this Agreement

whether or not such Class Member executes the release, covenant not to sue, and ratification to be inscribed on the Distribution Checks.

**Section 5.5. Claims Extinguished.**   Class Members, and each of them agree and acknowledge that the releases and covenants not to sue set forth in this Section 5 bar and extinguish any and all claims against ExxonMobil (whether asserted directly or indirectly against ExxonMobil and whether asserted by, through, or under any Class Member or by, through, or under any other interest owner) concerning or relating in any way to the Released Claims, and Class Members each further covenant that they shall not sue, institute, or investigate any legal, equitable, or administrative claims or proceedings against any other current or former owners of working interests, overriding royalty interests, or royalty interests with respect to the Released Claims.

**Section 5.6. Waiver of Restrictions on General Release.** The   release   in   this Agreement is a general release and shall be construed and interpreted as a general release.  Class Members, and each of them, expressly and voluntarily waive any and all rights that they may have under any statute or common law principle that would limit the effect of the releases stated herein to those claims actually known or suspected to exist at the time of execution hereof, including but not limited to the provisions of section 1542 of the California Civil Code (to the extent deemed applicable notwithstanding that this Agreement does not provide for the application of California law), which provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

**Section 5.7.   Indemnities.**  Each Class Member who receives a distribution of monies from the Settlement Fund shall by endorsement of the Distribution Check be deemed to have

agreed to indemnify ExxonMobil, Class Representative, and Class Counsel to the extent of the amount of his/her/its distribution of the Settlement Fund from claims by third-parties by, and through or under them (other than those Class Members who opt-out of the Settlement Class) relating to the Settlement Fund.

Section 5.8.  **Further Prosecution Enjoined.**  The Parties agree that the Judgment shall include an injunction prohibiting any Class Member and those acting in concert with them from litigating, prosecuting, commencing, or otherwise pursuing any Released Claims in any other case or proceeding in any other court or tribunal, regardless of whether such case or proceeding exists on the date the Judgment is entered or is commenced after the Judgment is entered.

Section 5.9.  **Certain Claims Not Waived.**  Notwithstanding anything in this section 5 to the contrary, the Parties, and each of them, reserve the right to enforce (in accordance with the other provisions of this Agreement) the following: (a) the terms of this Agreement and any obligations of the Parties hereunder; (b) the terms as modified hereunder of any oil and gas lease, assignment, division order, unit agreement, or unit operating agreement; and (c) the right to suspended funds which under this Agreement are to be handled in the ordinary course of business.

## 6.   SUBMISSION OF SETTLEMENT; PRELIMINARY APPROVAL

Section 6.1.  **Request for Preliminary Approval.**  Immediately, but in no event later than three (3) business days after the Agreement has been executed, Class Representative and Class Counsel shall submit the Agreement to the Court and shall apply to the Court for entry of the Preliminary Order or Orders to:

(a)   preliminarily approve the Settlement;

(b)      provide for the distribution and publication of the Notice of Preliminary Approval of Settlement, and Hearing ("Notice") to the persons in the Class;

(c)      restrain or enjoin all persons in the Class and their counsel and anyone acting in concert with them or on their behalf from prosecuting, commencing, or continuing any of the Released Claims against the ExxonMobil Releasees, or do so in a separate order; and

(d)      direct that a hearing (the "Settlement Hearing") be held to determine whether the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Class, and such other matters as the Court may deem appropriate;

(e)      approve and appoint a Notice Administrator to administer the Notice to persons in the Class.

(f)      provide for requests to be made by any Class Member who desire to opt-out of the Class by requiring each person in the Class who wishes to be excluded from the Class to submit the information required by the Notice no later than thirty (30) days after the date on which the Settlement Administrator or Notice Administrator initially distributes the Notice, or at such other time as the Court may direct, or be bound by all proceedings and orders herein;

(g)      require each person in the Class  who wishes to challenge the fairness, reasonableness or adequacy of this Agreement or the Plan of Allocation, challenge the requested award of attorneys' fees or litigation expenses, or challenge the Compensation Fund, or challenges anything else related to the Settlement, to file with the Court, and contemporaneously mail to Class Counsel and to ExxonMobil's Counsel, no later than thirty (30) days after the date on which the Settlement Administrator initially distributes

(by mail or otherwise) the Notice, or such other time as the Court may direct, a notice of intention to appear and object, or be forever barred from separately appearing or objecting. Such notice must be signed by the objector and contain the objector's current address and telephone number. Such notice also must:

      (1)    Specify the person's objections;

      (2)    List in detail the reasons for the objections, including attaching any facts, expert opinions, and legal authority in support of the objection, and the name, address, telephone number, and email address of any attorney representing the objector;

      (3)    State that the objector will appear in-person at the Final Approval Hearing;

      (4)    Be accompanied by appropriate verification of ownership in one or more of the Class Leases; and,

      (5)    State the ExxonMobil Royalty owner number of such royalty owner

    (h)    Direct that the Settlement Administrator or Notice Administrator furnish Class Counsel and ExxonMobil's Counsel with copies of all Requests for Exclusion upon receipt of same, and to file with the Court, no later than five (5) business days after the deadline for submission of Requests for Exclusion, a report identifying all members of the Class who have timely and properly opted-out; and

    (i)    Address such other matters as the Court should find are reasonable and necessary to give full and adequate notice to the Class of this Agreement.

The Preliminary Approval Order, or combined orders if more than one, shall at least include terms substantially like those in Exhibit "D". As a result of the cooperation clause in the

Agreement, ExxonMobil will not oppose the Class Representative's Motion as long as it meets the requirements of this Agreement.

**Section 6.2.   Notice to Be Distributed.**   No later than seven (7) business days after the Court enters the Preliminary Approval Order, the Notice, as approved by the Court, shall be distributed to Class Members at their last addresses known to ExxonMobil. The proposed form of Notice to be submitted for approval to the Court is attached hereto as Exhibit "C".

**Section 6.3.   ExxonMobil's Provided Information.**   ExxonMobil shall provide the following information, to the extent reasonably available, without undue burden or expense, in the condition it exists, and without warranty regarding the extent, completeness, accuracy or storage media of ExxonMobil's business records, which the Notice and or Settlement Administrator may use in its discretion as an aid to administration of the Settlement Proceeds:

 a. Electronic spread-sheet(s) reflecting the following Class Member information on a Division Order/Unit basis as may be currently exist in ExxonMobil's electronic payment history records: name, address, interest owner number, tax identification number, applicable division order number(s), applicable decimal ownership interest(s), and payment history on a monthly basis for Royalties on Gas produced from Class Wells.

**Section 6.4.  Cooperation.**   The parties will cooperate to insure Notice is adequately provided to Class Members and to insure that this Court's consideration of the Settlement for final approval is not interfered with or delayed, or that either of the parties are distracted with litigation over all or any part of the Royalty.

**Section 6.5.   Confidentiality of Information.**   The Class Representatives, Class Counsel, Notice Administrator, and Settlement Administrator agree, for themselves and their agents and contractors, that any such information and records ExxonMobil provides pursuant to this section 6 are confidential and shall be maintained as strictly confidential and

returned (including copies) to ExxonMobil within 6 months following Final Approval.

**Section 6.6.    Distribution of Class Notice.**        Notice Administrator with assistance of Class Counsel shall be solely responsible for the mailing, publishing, or otherwise distributing of the foregoing notices in the manner directed by the Court. ExxonMobil shall use reasonable efforts in compiling the Distribution List and shall provide the same at no cost or expense to Class Counsel. The costs and expenses actually incurred in printing, publishing, and mailing the Notice of Preliminary Approval of Settlement, and Hearing and any other notice to the Class, as set forth above, shall be paid by Class Counsel out of the Administration Fund, subject to the Administration Expense Reimbursement.

**Section 6.7.  No Admission Concerning Class Certification.**        By entering into this Agreement, ExxonMobil does not waive or prejudice in any way their right to later oppose certification of a class on any grounds if the Settlement is terminated for any reason.

**Section 6.8.  Requests for Exclusion.**        With    the    exception    of    the    Class Representative, who will not request exclusion, any person or entity who falls within the Class definition but wishes to be excluded from the Class, must do so in strict compliance with Section 6.1(f).

Any person or entity who submits a valid and timely Request for Exclusion shall be deemed to have voluntarily and forever waived any right or claim to any part of the Settlement Fund, any right or claim to participate in the distribution of the Settlement Fund, any right or claim to future relief under the Agreement, and any right to object to the Settlement Agreement, the Plan of Allocation, or any award of fees, costs, and expenses.

Any person or entity who falls within the Class definition but who does not submit a timely and valid request to be excluded in strict compliance with Section 6.1(f) shall be deemed

a Class Member and shall conclusively be bound by all subsequent proceedings and orders herein.

7.      **FINAL APPROVAL BY THE COURT**

**Section 7.1.   Hearing and Judgment.**      After the distribution of the Notices to persons in the Class, as provided above, but in no event later than ten (10) days before the Settlement Hearing, Class Representative and ExxonMobil shall move for and seek the Court's final order approving the Settlement and ExxonMobil shall cooperate so that the Settlement Hearing may be held as scheduled by the Court in the Notice. Upon final approval of the Settlement by the Court, Class Representative, Class Counsel, and ExxonMobil shall submit for entry by the Court in the Settled Case a proposed Judgment, including at least the following terms:

a)  The Judgment incorporates by reference the definitions in the Agreement, a copy of which attached as Exhibit 1, and all capitalized terms used therein shall have the same meanings as assigned to them in the Agreement.

b)  Except as to any individual claim of those persons identified in Exhibit "I" hereto, who have validly and timely requested exclusion from the Class, the case and all claims contained therein, including all of the Released Claims, are dismissed with prejudice as to the Class Representative, Class and Class Members. The parties are to bear their own costs, except as otherwise provided in the Agreement.

c)  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court approves the Settlement set forth in the Agreement and finds that said Settlement is, in all respects, fair, reasonable, and adequate to, and it in the best interest of, the Class Representative, the Class, and each of the Class Members.

d) Upon the Judgment becoming Final, the Class Representative does, and each of the Class Members shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the ExxonMobil Releasees. Any and all Released Claims are permanently barred, enjoined, and finally discharged.

e) Upon entry of the Judgment, each and every Class Member is deemed to have accepted and ratified the Agreement and their respective Class Leases.

f) The distribution of the Notice of Preliminary Approval of Settlement, and Hearing as provided for in the Order Preliminarily Approving Settlement was an updated version of distribution as previously approved and again constituted the best notice practicable under the circumstances to all persons entitled to such notice, including individual notice to all persons in the Class who could be indentified through reasonable effort, and said Notice fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, and any other applicable law.

g) Adequate notice of the settlement of the Class Action Litigation has been given as required by law to the members of the Class. All members of the Class have been afforded a reasonable opportunity to opt out of the Class and to object to the Settlement.

h) Neither the Agreement nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement: (i) is or may be deemed to be or may be offered, attempted to be offered, or used in any way by the parties as a presumption, a concession, or an admission of or evidence of, any fault, liability or wrongdoing by the ExxonMobil Releasees or of the validity of any Released Claims against the ExxonMobil Releasees; or (ii) is or may be offered or

38

received as evidence or otherwise used by any person in these or any other actions or proceedings, whether civil, criminal, or administrative, against any parties to the Agreement other than to enforce the terms of the Agreement or orders or judgments issued by the Court in connection with the settlement. Class Representative, Class Counsel, ExxonMobil, or any Class Member may file the Agreement or Judgment in any action (a) that may be brought against any of them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppels, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion of similar defense or counterclaim, or (b) to enforce or otherwise effectuate the terms of the Agreement or orders or judgments issued by the Court in connection with the settlement, such Claims being excluded from the releases contained herein.

i)   The Class Representative, any person in the Class, nor any Class Member, no anyone acting in concert with them or on their behalf, either directly, representatively, or in any other capacity, are restrained and enjoined from (i) commencing against ExxonMobil any action or proceeding in any court or tribunal asserting any of the Released Claims; and (ii) continuing to litigate, prosecute, or otherwise proceed in any case, action, or proceeding in any court or tribunal asserting against ExxonMobil any of the Release Claims in any case, action, proceeding that is pending on the date of this order. In particular, any person that is a party (or their counsel) to *Joy Lenz, et al. vs. ExxonMobil Oil Corporation,* Case No. 2008-CV-37, in the District Court of Stevens County, Kansas, and *Willie Jean Farrar, et al. vs. Mobil Oil Corporation,* Case No. 01-CV-12, in the Twenty-Sixth Judicial District Court, Stevens County, Kansas is enjoined from

continuing to litigate, prosecute, or otherwise proceed in either *Lenz* or *Farrar*, including any appeals pending in either *Lenz* or *Farrar*.

j)  The Court shall retain exclusive jurisdiction to resolve any dispute pertaining to the Settlement or the Judgment. The Court's retained exclusive jurisdiction to resolve any dispute pertaining to the Settlement or the Judgment shall include, but not be limited to, the exclusive jurisdiction to implement and enforce the Judgment and this Settlement. ExxonMobil, Class Representative, and Class Members submit to the jurisdiction of the Court for purposes of resolving any dispute pertaining to the Settlement, the implementation of the Settlement and the Judgment, and the enforcement of the Settlement and the Judgment. ExxonMobil, Class Representative, and Class Members further agree that the Judgment shall incorporate the Agreement and be attached as an Exhibit thereto.

k)  Approval of the Settlement Administrator, authorization of payments out of the Settlement Fund and approval of the Plan of Allocation.

**Section 7.2.  Additional Papers.**   Class Representative, Class Counsel and ExxonMobil shall prepare and present to the Court any additional papers that are appropriate and reasonably necessary to obtain preliminary and final approval of the Settlement and the entry of the Judgments.

## 8.   CONTINGENCIES, CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION, or TERMINATION

**Section 8.1.   Finality is Condition Precedent.**   This Agreement, and the Parties' performances hereunder, are contingent upon the Judgment and Settlement becoming Final, and in the event the Settlement does not become Final, this Agreement shall terminate and be

canceled, subject to the continued viability and effectiveness of the "Surviving Provisions" described in Section 8.8 below.

     **Section 8.2    Specific Conditions.**  In addition to the other provisions of this section 8, the Settlement and this Agreement are contingent upon each and every one of the following conditions occurring:  (a) the entry of an order granting preliminary approval of the Settlement; (b) the entry of the Final Judgment approving the Settlement that dismisses with prejudice the Settled Case in accordance with the terms of this Agreement; (c) the orders and judgments described in (a) and (b) above not being vacated or reversed on appeal; (d) the orders and judgments described in (a) and (b) above not being modified in a manner that materially and adversely affects any of the signatories hereto. In addition, ExxonMobil shall have the option to withdraw and terminate this Agreement if either of the following occur: (i) the Preliminary Approval Order or separate orders concurrently entered by the Court does not include both a temporary restraining order and a preliminary injunction prohibiting any person in the Class, their counsel and any person acting in concert with them or on their behalf from prosecuting, continuing, commencing, or litigating in any case, appeal or other proceeding, for any Released Claims against any and all ExxonMobil Releasees until a final approval hearing has been held or if such temporary restraining order or preliminary injunction is dissolved by any court or, (ii) the Final Judgment does not enjoin all Class Members and all persons acting in concert with them, including their attorneys, Class Counsel and other representatives from prosecuting, continuing, commencing, or litigating any Released Claims against any and all ExxonMobil Releasees.  Such option to withdraw and terminate under (i) above shall be deemed waived if not exercised within 30 days of the Preliminary Approval Order.

**Section 8.3.   Election to Withdraw.**      This   Settlement   is   intended   to   be comprehensive and clarify future rights and obligations concerning Royalty Rights and Royalties in the future.   Accordingly, ExxonMobil shall have the right and election to withdraw (the "Election Trigger") from and terminate this Settlement if either of the following occurs:

       (a)      The Opt-out Adjustment reduces the Total Settlement Payment by 6% or more; or

       (b)      The total sum of Royalties paid to all Excluded Persons for production from January 1, 1988 to December 31, 2011 equals or exceed 6% of the total sum of Royalties paid to all Class payees for the same period.

**Section 8.4     Notice of Withdrawal.**      The   subscription   to   the   Agreement   and Settlement of Class Members holding aggregate interests sufficiently large to avoid the Election Trigger set forth in Section 8.3 is a condition precedent to the Settlement. Notwithstanding the occurrence of the Election Trigger, ExxonMobil shall have the right, but not the obligation, to enforce this Agreement and to consummate the Settlement as to those who do not opt out, subject to the adjustments provided for in Section 8.3 above by providing written notice to Class Counsel of the waiver of this condition within seven (7) business days of the later of the date ExxonMobil receives from Class Counsel or the Settlement Administrator copies of all of the Requests for Exclusion received or the deadline set by the Court for receipt of such requests. Such deadline can be extended in writing by Class Counsel.

**Section 8.5     Material Modifications of Settlement.**      If any court enters an order modifying the terms of the Settlement set out in this Agreement in a way that any signatory determines materially and adversely affects his, her or its interests, such party may elect to terminate the Settlement in its entirety by giving written notice within ten (10) business days from the date the court enters such an order unless such party has previously agreed to such

modification by the Court. If such termination notice is not given within the time allotted, the Settlement shall proceed as modified by the court order. No order of any court solely concerning the following shall constitute grounds for cancellation or termination of this Settlement: (a) the administration of the Settlement Fund, (b) the Administration Fund, (c) the Compensation Fund, (d) the Plan of Allocation, (e) the distribution of the Settlement Fund, (f) the amount of any attorneys' fees or expenses, (g) the content of the Notice to the Class, or (h) Compensation Fund awarded to the Class Representative.

Section 8.6.   Additional Elections.   ExxonMobil, in its sole, absolute, and unconditional discretion, may terminate the Settlement if a trial begins in *Willie Jean Farrar, et al. v. Mobil Oil Corp.*, No. 01 CV 12, In the 26th District Court, Stevens County, Kansas.  For purposes of this Settlement, a trial in *Farrar* will be deemed to have begun on the first to occur of (i) jury selection begins, or (ii) the plaintiffs in *Farrar* call their first witness.

Section 8.7.   No Liens on Settlement Fund.   Prior to the Settlement becoming Final, neither Class Representative, Class Counsel, nor Class Members shall have any right to and shall not attach, garnish, encumber, or otherwise attempt to place a lien on the Settlement Fund or interest accrued thereon.

Section 8.8   Effect of Termination.   If the Settlement is terminated or the Judgment does not become Final, the Parties shall be restored to their respective positions in the Case before the execution of this Agreement. In that event, the terms and provisions of the Agreement, with the exception of provisions described below (hereinafter the "Surviving Provisions"), shall be void and of no further force and effect and shall not be offered as evidence or otherwise used in the Settled Case or in any other proceeding for any purpose, and any judgment or order entered by the Court pursuant to or relating to this Agreement shall be treated

as having been vacated. The "Surviving Provisions" are the following and shall remain in full force and effect notwithstanding the termination of this Agreement: (a) sections 6.5, 11.1, 11.2, 11.3, 11.5 and 11.13. A New Scheduling Order will be submitted to the Court setting dates then deemed appropriate or, failing agreement, the parties shall make appropriate proposals to the Court.

9.      **ADMINISTRATION; ALLOCATION; DISTRIBUTION**

Section 9.1.  **Court to Oversee Allocation and Distribution Matters.**

Matters concerning administration of the Settlement, allocation and distribution of the Settlement Fund, and matters concerning the Administration and Compensation Funds shall be subject to the review and approval of the Court.

Section 9.2.  **Compensation Fund and Fees.**      To aid in the consideration of the Settlement by Class Members and the Court, and subject to the Court's approval, Class Representative proposes that the following will be separately identified and authorized for payment from the Settlement Fund prior to final distribution of the Net Settlement Fund:

(a)     an amount to be approved by the Court for reasonable and necessary attorneys' fees not to exceed one-third of the Total Settlement Amount and an additional 5%, if anything, to be approved by the Court for reasonable and necessary attorneys' fees related to the appeal of the Settlement if it is appealed and reasonable expenses incurred by Class Counsel (including travel expenses, copying and computer expenses, deposition expenses, expert witness and consultants expenses, and such other expenses as have been incurred in connection with the investigation, prosecution, and settlement of the Settled Case or *Lenz* case or in connection with the administration of the Settlement);

(b)      an amount to be approved by the Court as is reasonable and necessary for a Compensation Fund not to exceed .001 of the Total Settlement Amount; and

(c)      an amount to be approved by the Court as is reasonable and necessary for the Administration Fund, if any, in excess of the Administration Expense Reimbursement to defray administrative and other costs and expenses incurred in connection with the Settlement (including costs associated with notices, claims administration, allocation, distribution, accounting and reporting).

ExxonMobil will take no position on any of the amounts requested under (a)-(c) above.

**Section 9.3.  Allocation and Distribution Considered Separately.**      ExxonMobil shall have no responsibility for administration, allocation, or distribution relating to the Settlement Fund, or for establishing the Administration and Compensation Funds, or for accounting or reporting concerning such matters, with the limited and express exception of ExxonMobil's agreement to provide certain information pursuant to sections 6.3. The specific procedures and processes for administration, allocation, distribution and accounting concerning the Settlement Fund are not part of this Agreement and will be considered by the Court separately from the consideration of fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement.

**Section 9.4.  Certain Matters Not Affecting Finality.**    No  order  or  proceeding related to the Plan of Allocation or procedures for distribution of the Settlement Fund shall operate to terminate or cancel this Agreement, affect the Settlement becoming Final, or affect entry of a Judgment.

**Section 9.5.  Plan of Allocation.** Class Representative and Class Counsel shall be solely responsible for formulating the Plan of Allocation of the Settlement Fund to the Settlement

Class, submitting the proposed Plan of Allocation to the Court for approval and for obtaining

Court approval of any such plan. It is understood and agreed by the Settling Parties that any

proposed Plan of Allocation, including, but not limited to, any adjustments to a Class Member's

claim set forth therein, is not a part of this Agreement and is to be considered by the Court

separately from the Court's consideration of the fairness, reasonableness, and adequacy of the

Settlement set forth in this Agreement, and any order or proceeding relating to the Plan of

Allocation shall not operate to terminate or cancel this Agreement or affect the finality of the

Court's Judgment approving this Agreement and the Settlement set forth herein, or any other

orders entered pursuant to this Agreement.

ExxonMobil shall have no responsibility for any Plan of Allocation, or distribution, or on

any related accounting matters.  Irrespective of any Plan of Allocation and distribution approved

by the Court or of the implementation of same, the amounts paid and agreements made by

ExxonMobil hereunder are in complete, total, and final settlement and satisfaction of all

Released Claims of Plaintiffs, Class Counsel, and the Class Members against ExxonMobil and

shall be deemed to be adequate consideration for the release, covenant not to sue, and dismissals

with prejudice referenced herein.

**Section 9.6.  Settlement Fund/Recovery of Administration Expenses.**   ExxonMobil

shall have no interest in or control of the Settlement Fund after the Settlement and Judgment

becomes Final.

**Section 9.7.  No Responsibility for Administration.**    ExxonMobil shall have no

responsibility for or liability whatsoever to Plaintiffs, Class Members, Class Counsel, or any

third party or entity regarding the administration, allocation, or disbursement of the Settlement

Fund. ExxonMobil shall, however, make available to the Court or to Class Counsel for their

review, on reasonable notice, information in their possession concerning the payments to and interests of Class Members as provided in section 6.3 as may be required by the Court or reasonably requested by Class Counsel relating to the Plan of Allocation and distribution and as is reasonably necessary to administer and disburse the settlement funds. Class Counsel, the Settlement Administrator, or such other party as may be designated by the Court shall be responsible for the method and manner in which such information, and any additional information, is utilized to formulate and prepare the final plan of distribution to be approved by the Court.   ExxonMobil will make reasonable efforts to make such information available in response to reasonable requests by Class Counsel.

Section 9.8.    **Distribution of Net Settlement Fund.**    In accordance with the terms of this Agreement, the approved Plan of Allocation, and upon such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Class Members on the Distribution List approved by the Court.. Promptly, but in no event later than thirty (30) days following the last date established by the Court for the return of requests to be excluded from the Class, Class Counsel will move for the Court's approval of a list of the names of the Class Members comprising the Distribution List. No later than 30 days following the Court's  order approving of the Plan of Allocation, Class Counsel will file with the Court, all pursuant to such Plan, a schedule showing the amounts to be distributed to each Class Member on the Distribution List to whom Distribution Checks will be distributed.   The Distribution List showing such amounts shall be filed under seal or listed only be ExxonMobil royalty owner ID number.

Section 9.9. **No Responsibility for Incorrect Distribution.**    Any person or Class Member who receives and negotiates a Distribution Check to which another person is rightfully

47

entitled for any reason, including a transfer of rights between persons not appearing in ExxonMobil's division of interest records or of which ExxonMobil did not receive the notice required in any Class Lease or division order, shall be deemed to possess and hold such funds for the benefit of such person rightfully entitled thereto. ExxonMobil, Class Representative, Class Counsel, and the Settlement Administrator shall have no liability whatsoever to any such person, whose rights shall be solely against the person receiving and possessing the funds.

**Section 9.10. Unclaimed Funds.** The Settlement Administrator shall, not less than One Hundred Sixty (160) days after the Distribution Date, determine for the Court, the total dollar amount of those distribution checks which were payable to a Class Member but which were not negotiated by the Class Member for any reason, for example, because a Class Member could not be located or a Class Member failed or refused to negotiate his Distribution Check. All such monies shall be considered to be "Unclaimed Funds" and will be held in trust in an interest-bearing account by the Settlement Administrator for a period of time approved by the Court. After the court-approved time period expires, any remaining Unclaimed Funds, plus all accrued interest, shall be paid into the registry of the Court for cy pres distribution to either a suitable charity mutually agreeable to the Parties or a suitable charity selected by the Court..

**10.    FEE APPLICATION; EXPENSE REIMBURSEMENT; AWARDS**

**Section 10.1. Class Counsel Application for Fees.** Not later than ten days (10) before the date of the hearing to consider and approve the Settlement, Class Counsel will apply to the Court for an award of attorneys' fees and reimbursement of expenses, payable within eighteen (18) business days of the date the Settlement becomes Final. Any approved fees shall be payable only out of the Settlement Fund. Class Counsel also intends to seek Court approval for constitution of the Compensation Fund providing for compensation to the Class Representative

and such others as are deemed appropriate for their participation and financial investment in the investigation, prosecution, and settlement of the Settled Case and for the time and effort expended in obtaining the Settlement. Class Counsel reserves the right to submit a subsequent application to the Court for reimbursement of fees and expenses related to services performed and expenses incurred after the date of the Settlement Hearing. It is contemplated that Class Counsel will seek an award of attorneys' fees based upon the Total Settlement Amount, provided that the foregoing is not intended to interfere with the Court's discretion in determining such award.

Section 10.2.  **ExxonMobil Not Responsible for Attorneys' Fees.**        Apart     from the cash amounts payable pursuant to this Settlement, which shall be the total sums ever to be paid by ExxonMobil with respect to the Claims, ExxonMobil shall not have any responsibility or liability to Class Representative, Class Members, or Class Counsel with respect to any award of attorneys' fees or expense reimbursement, except to the extent of the Administration Expense Reimbursement.

11.     **OTHER PROVISIONS**

Section 11.1.  **No Admissions.**        ExxonMobil is entering into this Settlement solely to terminate litigation and avoid the expense and burden of protracted, complex, and expensive proceedings and to buy peace. By entering into the Agreement, the ExxonMobil does not admit, and specifically denies, any liability whatsoever to any and every Class Member and further specifically denies that ExxonMobil violated or breached any obligation or duty of any kind owed or claimed to have been owed to Class Members. Furthermore, by entering into the Settlement Agreement, the ExxonMobil does not admit that the Litigation was properly maintained as a class action for purposes of litigation. None of the Parties to the Settlement, no

Class Member, and no one in privity with them may argue before any court, agency, or other forum that the Settlement shows or evidences in any way that ExxonMobil violated any law, legal, or equitable obligation.

**Section 11.2.  Settlement Not an Admission.**      Neither this Settlement, nor any act performed or document executed pursuant to or in furtherance of such Settlement, (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Released Claims, or of any alleged wrongdoing or liability on the part of ExxonMobil; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or admission on the part of ExxonMobil in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

**Section 11.3.  Negotiations and Agreement Inadmissible.** Neither this Agreement nor any of the negotiations or proceedings connected with this Agreement or the Settlement may be offered or received in evidence for any purpose other than for purposes of obtaining approval of this Settlement and dismissal of the Settled Case, enforcement and implementation of the terms of this Settlement, and to support any defense or counterclaims of Plaintiffs or ExxonMobil based on principles of res judicata, collateral estoppel, full faith and credit, waiver, release, good faith settlement, judgment bar, claim preclusion, issue preclusion, or any other defenses, without limitation, related to the Released Claims.

**Section 11.4.  Cooperation and Further Instruments.**     The     Parties     agree     to reasonably cooperate with one another to seek approval of this Agreement and the Settlement and to obtain entry of a Final Judgment in the Settled Case and effect consummation of the Settlement as provided for in this Agreement. The Parties agree to execute such further

documents and obtain such orders of the Court as are reasonably necessary to implement and are consistent with the provisions of this Agreement.

**Section 11.5.   Confidentiality Agreements Survive Settlement.**  All agreements made and orders entered during the course of the Settled Case related to the confidentiality of information survive this Settlement; provided, however, that the Parties acknowledge and agree that confidential information may be disclosed, subject to such confidentiality orders, to the Notice and Claims Administrators. Additionally, ExxonMobil may share this information with its employees, attorneys, tax advisors, and financial advisors with a need to know for financial, accounting and regulatory purposes and only for those purposes.  Notwithstanding the foregoing, Class Representative or ExxonMobil may disclose information if and to the extent that it is requested pursuant to a judicial or governmental request or order, or a requirement under law, provided that the disclosing party provides the other party with sufficient prior notice as may be reasonable under the circumstances in order to contest such request, requirement, or order or to seek protective measures.

**Section 11.6.  Time Extensions.**    Without further order of the Court, the Class Counsel and ExxonMobil's Counsel may agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**Section 11.7.   No Modifications Except by Signed Writing.**    This Agreement may be amended or modified by the Parties only by writing executed by each of them; provided, however, that any amendment or modification determined by the Court to affect the Class shall require approval by the Court.

**Section 11.8. Agreement Binding on Successors.** This Agreement shall be binding upon and inure to the benefit of Class Representative, the Class Members, Class Counsel, and

ExxonMobil and their respective heirs, predecessors or successors-in-interest, and assigns and to any corporation, partnership, joint venture, trust, or any other entity into or with which any other party may merge, consolidate, or reorganize.

**Section 11.9.  No Third-Party Beneficiaries.**        Nothing in this Agreement, or in any further documents executed pursuant hereto, is intended to give or shall be construed as giving any third party or parties not expressly referenced herein any rights, or as imposing upon any Parties hereto any obligations or responsibilities to such third party or parties,

**Section 11.10.   ExxonMobil May Assign.** Notwithstanding any other provision of this Agreement, ExxonMobil may, at any time and in its sole discretion, assign, transfer, sell, or otherwise convey its rights under this Agreement to another person or entity.  ExxonMobil may assign, transfer, or otherwise convey its rights under this Agreement without the consent of Class Representative, Class Counsel, or the Class Members.

**Section 11.11.  Voluntary Agreement.**        The Parties expressly acknowledge and agree that this Agreement is entered into freely by them based on their respective investigations, assessments, and on the advice of their respective counsel, and not on the basis of any representations or assurances by, or in reliance upon any representations or assurances by, opposing or other parties or counsel for such opposing or other parties other than those representations expressly set forth in this Agreement. The Parties further expressly acknowledge and agree that this Agreement was prepared and approved jointly by the Parties, and not by anyone party or several parties to the exclusion of other parties, and any rule of or maxim of construction providing that a contract is to be interpreted against the drafting party shall not apply.

**Section 11.12.  Signers Authorized.** The individuals executing this document for Class Members and ExxonMobil represent and warrant that they do so with full authority to bind each such designated party to the terms and provisions hereof.

**Section 11.13.  Return of Documents and Materials.** The Parties agree to return documents and materials produced in this case in accordance with any and all confidentiality agreements and protective orders entered into in the Settled Case unless otherwise agreed in writing.

**Section 11.14.  Taxes.** Class Representative, Class Counsel, and Class Members agree that ExxonMobil, Class Counsel, and Class Representative shall have no responsibility for county, state, or federal taxes or tax consequences, including severance taxes and tax consequences, that may result from the implementation of this Agreement or the terms hereof, solely except any obligation imposed by law requiring ExxonMobil to withhold and remit any taxes directly to taxing authorities and any obligation of the Class Representative as to his own payments hereunder.  Any change in such tax or tax consequences that may result from a change in taxable value received by Class Representative and Class Members shall be solely the responsibility of Class Members receiving same.

Class Members hereby agree to indemnify ExxonMobil, and each of them, against, and to hold ExxonMobil harmless of and from, any and all liability incurred by ExxonMobil or imposed on ExxonMobil that arises (a) as a result of the transactions described in this Settlement or (b) with respect to the interests of Class Representative and Class Members. Without limiting the foregoing in any way, this agreement to indemnify and hold harmless shall extend to and include any such liability for the following: (1) severance, production, ad valorem, or similar taxes or charges; and (2) interest, penalties, or penalty interest on such taxes or charges. ExxonMobil

shall have the right to recoup after 20 days written notice to the pertinent Class Members, as permitted by law, the indemnity payments provided for in sections 5.7 and 11.14 from royalty and revenue payments due to Class Members for future production of gas, natural gas liquids, helium, or other gas constituents.

Section 11.15.  **Exhibits Incorporated.**     All the exhibits to this Agreement are an integral part of this Agreement.

Section 11.16.  **Counterparts.**     This Agreement, and its exhibits, may be executed in one or more counterparts, all of which together shall be one instrument, and all of which shall be considered duplicate originals.

Section 11.17.  **Court to Retain Exclusive Jurisdiction.**  The    Court    shall    retain exclusive jurisdiction to resolve any dispute pertaining to the Settlement or the Judgment.  The Court's retained exclusive jurisdiction to resolve any dispute pertaining to the Settlement or the Judgment shall include, but not be limited to, the exclusive jurisdiction to implement and enforce the Judgment and this Settlement.  ExxonMobil, Class Representative, and Class Members submit to the jurisdiction of the Court for purposes of resolving any dispute pertaining to the Settlement, the implementation of the Settlement and the Judgment, and the enforcement of the Settlement and the Judgment.  ExxonMobil, Class Representative, and Class Members further agree that the Judgment shall incorporate the Agreement and be attached as an Exhibit thereto.

Section 11.18.  **Entire Agreement.**  This Agreement and the exhibits hereto represent the entire, fully integrated agreement between the Parties with respect to the Settlement of the Case and may not be contradicted by evidence of prior or contemporaneous oral agreements between the parties. This Agreement cancels and supersedes any and all prior agreements,

understandings, representations, and negotiations concerning this Settlement.   No additional obligations or understandings shall be inferred from any of the terms of this Agreement, as all obligations, agreements, and understandings with respect to the subject matter hereof are solely and expressly set forth herein.   It is understood and agreed that the Parties rely wholly on their own respective judgment, belief and knowledge of the facts relating to the making of this Settlement, which is made without reliance upon any statement, promise, inducement, or consideration not recited herein.   No modification or waiver of, addition to, or deletion from the terms of this Agreement shall be effective unless made in writing signed by the party to be charged.

**Section 11.19. Governing Law and Forum.**      This Agreement shall be governed solely by federal law as to procedural matters and, as to substantive matters and interpretation of terms, shall be governed by and construed in accordance with the laws of the State of Kansas without reference to principles of choice of law or conflicts of law.

**Section 11.20. Parties to Bear Costs.**      Except as otherwise provided in this Agreement, all costs shall be borne by the party incurring same.

**Section 11.21. Matters of Interpretation.**   Each Party and counsel to each Party has participated in preparing and has reviewed and approved this Settlement and Agreement. Accordingly, no presumption or other rule of construction, including *contraproferentum contractus*, that any ambiguities be resolved against the drafting Party shall be applied in interpreting this Agreement.

**Section 11.22. Severability.**   If any clause, phrase, sentence, provision, paragraph, term, or condition of this Agreement shall be held invalid, illegal, or unenforceable as to any Class Member by any court, regulatory agency, or tribunal of competent jurisdiction, the

validity, legality, and enforceability of the remaining provisions, terms, or conditions shall not in any way be affected or impaired as to any other Class Member thereby unless the releases of ExxonMobil or covenants not to sue ExxonMobil contained herein or modification of Royalty Rights are held invalid, illegal, or unenforceable.  If any release of ExxonMobil, covenant not to sue ExxonMobil, or modification of Royalty Rights or Class Leases is held invalid, illegal, or unenforceable, then ExxonMobil shall have the right to seek the return of any payments made or consideration given under this Agreement.

**Section 11.23. Subheadings.**     The subheadings and headings included in this Agreement are for convenience only and shall not be used or considered in the interpretation or construction of this Agreement.

**Section 11.24. Further Documents.**   The Parties and each Class Member agrees to execute such further instruments and documents as may be reasonably necessary to fully effectuate this Agreement and the Settlement.

**12.     NOTICES**

**Section 12.1. Notices**.       Notices to be provided under this Agreement, save and except for the Notices described in and to be provided under section 8 in connection with approval of the Settlement and certification, shall be provided as follows:

12.1.1.  If to Class Members or to Plaintiffs, notice shall be provided to Class Counsel.

12.1.2   If to ExxonMobil, such notice shall be provided to ExxonMobil's Counsel.

Any changes in the foregoing notice designations may be made in writing, forwarded to the other designees as provided in this section and shall not be effective until received by such other designees.  Notices to Class Counsel or ExxonMobil's Counsel may be by email.

IN WITNESS WHEREOF, this Agreement has been signed by the undersigned counsel of record as of August _____, 2012 but shall be considered executed upon receipt of all necessary approvals.

[THIS SPACE INTENTIONALLY LEFT BLANK SIGNATURES ON FOLLOWING PAGES]

Jimmie Hershey, Individually and as representative
of the Class Members


GUNDERSON, SHARP & WALKE, LLP

Rex A. Sharp
5301 W. 75th Street
Prairie Village, Kansas 66208
Telephone:     (913) 901-0505
Facsimile:     (913)901-0419

**CLASS COUNSEL AND ATTORNEYS FOR CLASS REPRESENTATIVE JIMMIE HERSHEY**

Patton G. Lochridge, Attorney and Authorized
Representative, ExxonMobil Oil Corporation


HITE, FANNING, & HONEYMAN L.L.P.

Richard C. Hite, SC#04796
100 N. Broadway, Suite 950
Wichita, Kansas 67202-2209
Telephone:  (316) 265-7741
Facsimile:  (316) 267-7803

**ATTORNEYS FOR DEFENDANT
EXXONMOBIL OIL CORPORATION**