IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JIMMIE HERSHEY,
   individually and on behalf
   of all others similarly situated,
           Plaintiff,

      vs.                         Case No. 07-1300-JTM

EXXONMOBIL OIL CORPORATION,
           Defendant.


MEMORANDUM AND ORDER


This matter is before the court on the parties' request for approval of the proposed Settlement Agreement. Two members of the plaintiff class have filed formal objections to the settlement. The court has reviewed the parties' submissions, and finds that the Settlement and Plan of Allocation are fair, reasonable, and adequate under all the circumstances of the case. The court approves the Settlement and Plan of Allocation as provided herein.

The court further grants the request for attorney fees of class counsel Gunderson, Sharp and Walke. The court denies the request for attorney fees of *Farrar* class counsel Fleeson, Gooing.

Under the proposed settlement, ExxonMobil will pay $54 million in order to settle the improper royalty deduction claims of the plaintiff class. In addition to that

cash payment, ExxonMobil agrees to forego certain future gathering deductions, pay up to $200,000 in expenses for class notice and settlement administration, acknowledges that this case led it to pay over $800,000 in Conservation Fee deductions (with interest) back to Class Members and forego future Conservation Fee deductions absent legislative approval, and pay for all components of the gas stream from Class Wells for which it is paid in the future.

***The Settlement Agreement is Fair, Reasonable, and Adequate***

The  settlement of a class action may be approved where the court finds that the settlement is fair, reasonable, and adequate. *Rutter & Wilbanks Corp. v. Shell Oil*, 314 F.3d 1180, 1186 (10th Cir. 2002). The court reviews a proposed class action settlement by considering four factors:

(1)  whether the proposed settlement was fairly and honestly negotiated;

(2)  whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)  whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)  the judgment of the parties that the settlement is fair and reasonable.

*Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir.1993) (*quoting Jones v. Nuclear Pharmacy*, 741 F.2d 322, 324 (10th Cir. 1984), *abrogated on other gds.*, *Devlin v. Scardelletti*, 536 U.S. 1 (2002).  Proponents of a settlement have the burden of showing that the settlement is fair. *Id.* at 1015.

Courts considering such settlements do so in light of the strong presumption of favoring compromise of disputes generally, but which

> is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation. The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts. In addition to the conservation of judicial resources, the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.

*Rutter & Wilbanks Corp. v. Shell Oil,* 314 F.3d 1180, 1188 (10th Cir. 2002). *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3rd Cir. 2010) (citations omitted). Approval of a proposed settlement is committed to the sound discretion of the trial court. *Jones,* 741 F.2d at 324.

Application of the relevant factors here provides strong support for the adoption of the proposed settlement. First, the court finds that the settlement was fairly and honestly negotiated. The pleadings and evidence before the court demonstrate that the parties engaged in lengthy and vigorous negotiations, reflecting the compromise of claims and defenses which have been the subject of extended litigation and exhausting discovery. Counsel for the parties are skilled in oil and gas royalty deduction class actions, and reached a settlement after extensive litigation on the issue of certification in the midst of complex and lengthy summary judgment briefing. There is neither credible evidence nor reasonable suspicion that the settlement was collusive or improper. The form and content of the settlement reflect the parties' considered judgment as to the

legal uncertainties surrounding the claims of the plaintiff class. This factor supports approval of the settlement.

The court finds that substantial questions of law and fact remain in the action. Both the plaintiff class and defendant ExxonMobil possess potentially valid legal arguments, supported by a large body of evidence. The settlement has occurred after the parties commenced summary judgment proceedings, but prior to its completion. The court's review of the incomplete summary judgment pleadings, coupled with its prior consideration and resolution of other issues in the case, confirms the conclusion that important and substantial questions of law and fact remain in the case. The ultimate outcome in the action is subject to doubt, and this factor supports approval of the settlement.

The proposed settlement also provides a means of immediate recovery for the thousands of class members who have neither objected to the settlement nor opted out from the plaintiff class. If the action were to proceed, there is a substantial possibility that ExxonMobil may prevail in its arguments and defenses. Further, even if such recovery occurs, it may be many years down the road. The present action is already five years old. Given the huge amount information which must be produced, the complex arguments to consider in deciding the summary judgment motions, trial, and likely appeals, the ultimate resolution of the action is likely to be years away. The court finds that the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation. This factor also supports approval of the settlement.

Finally, the knowledgeable and experienced counsel of both the plaintiff class and defendant ExxonMobil support the settlement. Counsel contend that the settlement provides substantial and immediate benefits to the plaintiff class, in exchange for the final resolution of claims which were or could have been advanced against ExxonMobil. This factor, too, weighs in favor of approval.

An additional factor which may be considered in gauging the reasonableness of a class action settlement is the degree to which the members of the class support the settlement. "While the number of objectors is not controlling, a relatively small number of objectors can be taken as some indication that the class members as a group did not think the settlement was unfair." *Williams v. Sprint/United Management*, No. 03-2200-JWL, 2007 WL 2694029, *4 (D. Kan. Sept. 11, 2007) (citations and quotations omitted). This factor provides further support for approval of the settlement. In the present case, the plaintiff class comprises over 8,600 members. Of this number, fewer than ten members have opted out, and only two have objected.[1]

Taken collectively, these factors and all of the circumstances of the case confirms the conclusion that the proposed settlement is fair, adequate, and equitable. The same conclusion applies to the Plan of Allocation chosen by the parties. *See Law v. National Collegiate Athletic Ass'n*, 108 F.Supp.2d 1193, 1196 (D. Kan. 2000) (standard for approval of a plan of allocation is the same as for approval of the settlement as a whole). "As a general rule, a plan of allocation that reimburses class members based on the type and

---

[1] It may also be noted that close family and business associates of the two Objectors have chosen to remain in the plaintiff class, without objection or opting out. These include Willie Jean Farrar, the co-trustee of the Keith Farrar Revocable trust, and Patricia Lahey, the wife of Thomas Lahey.

extent of their injuries is reasonable." *Id*. (citations omitted). The court finds that the Plan of Allocation generally complies with settlement allocations approved in other royalty cases, and represents a reasonable settlement of the type and degree of damages claimed by individual class members.

### The Farrar and Lahey Objections are Overruled.

Two members have submitted objections to the settlement, Keith Farrar as Co-Trustee of the Keith Farrar Revocable Trust, and Thomas Lahey. As a preface to their specific objections to the notice and award allocation, which will be addressed below, the Objectors complain of a lack of discovery, and assert that the objection process violates due process. In addition, they contend that the procedure approved by the court for submitting objections violates their privacy rights by requiring them to supply identifying personal identification, and complain that the objection procedure requires them to submit to depositions to inquire as to the substance of their objections, and the personal appearance requirement at the fairness hearing.

The court denies these objections. The court has previously denied the request for discovery, and finds no grounds for revisiting this decision. ExxonMobil has supplied the same mountain of evidence in both *Farrar* and *Hershey*, and the objectors have failed to show the need for additional delay in consideration of the settlement. Further, the objectors supply no authority supporting their privacy argument, and the court finds that the Notice does not require the submission of anything other than rudimentary personal information such as name and telephone number. It does not

violate the privacy rights of the objectors. Finally, courts have specifically approved the requirement that an objector seeking to thwart a proposed class-wide settlement submit to deposition (*In re AT&T Mobility Wireless Data Serv. Sales Tax Litig'n*, 738 F.Supp.2d 935, 970 (N.D. Ill. 2011)) and personally attend the fairness hearing. *Freebird, Inc. v. Cimarex Energy*, 46 Kan.App.2d 631, 637-38, 264 P.3d 500, 506 (2011), *rev. denied*, (Kan. June 13, 2012).

More generally, due process does not mean that objectors are not entitled to dictate the means by which the court considers the fairness of the proposed settlement. Rather, due process requires only that objectors be accorded notice of the proposed settlement, and the opportunity to present their objections. Here, the objectors have participated in *Farrar* for over a decade, and have an ample basis on which to formulate their objections to the settlement. The 30-day notice approved by the court here accords with standard practice. *See, e.g., Sternberger v. Marathon Oil*, 257 Kan. 315, 346, 894, P.2d 788, 808 (1995) (approving 16-day notice period).

Lahey objects to the issuance of class certification on various grounds. The court finds that these objections fail. The present action was properly certified by the court's Order, and the claims in this action are broader and more extensive than those asserted in *Farrar*. The plaintiff class asserts claims generally for breaches of lease agreements, including the implied covenant of marketability. The claims thus asserted satisfy the requirement of Fed.R.Civ.Pr. 23(c)(1)(B) by asserting claims which define the class. The statute of limitations defense asserted by ExxonMobil remains only a *potentially* valid defense, in any event it may marginally affect the amount of individual allocated

payments. The present Settlement Agreement fairly and reasonably recognizes and resolves all claims for past damages, including those extending back to 1988.

The Farrar Trust and Lahey raise several objections to the Class Notice. Some of these, -- the lack of discovery, the failure to spell out specifically the amount of claimed improper deductions, the effect of the 1984 Settlement Agreement and the statute of limitations defense, the supposed conflict of interest of plaintiff class counsel, the supposed finality of the partial summary judgment award in *Farrar* -- are repetitions of arguments previously rejected, either expressly or implicitly, by the court. There is no evidence that the statute of limitations defense played any role in the present settlement, and the 1984 Settlement Agreement provided no substantial extra value to the plaintiff class, whose claims are predicated on pre-existing and independent claims of breach of the duty of marketability.

Otherwise, Lahey argues that (1) the amount of improper deductions is not separately spelled out; (2) that Fleeson has separately settled other class actions for a greater percentage of the claimed damages, (3) that the Settlement Agreement unfairly includes provisions for going forward cost sharing, and that the claim was generally insufficient. The *Farrar* Trust raises additional arguments against the Class Notice, including the contention that it (1) failed to include specific information as to the value of the settlement, giving confusing information as to the proposed distribution, (2) did not specify the precise nature of the *Farrar* partial summary judgment ruling, (3) fails to inform potential objectors of the potential attorney fee award or how to lodge objections

to such fees, suggesting further that such fees have already been awarded, and (4) fails to state how to object to the Plan of Allocation or the class representative incentive.

The sufficiency of a class notice is a matter left to the court's discretion. *In re Integra Realty Resources*, 262 F.3d 1089, 1111 (10th Cir. 2001).  Under Rule 23(e), a notice of settlement must be issued "in a reasonable manner to all class members who would be bound." This does not mean that the notice must spell out every detail of all aspects of the settlement. It is sufficient if the notice "fairly apprise[s] the class members of the terms of the proposed settlement and of their options." *In re Integra*, 262 F.3d at 1111. Thus, a class notice is not required to spell out the specific amount each class member will receive; it is sufficient where, as here, the notice provides a means of generally alerting class members of the terms of the settlement. *In re Checking Acct. Overdraft Litig'n*, 830 F.Supp.2d 1330, 1343-44 (S.D. Fla. 2011).

The court overrules the objections to the Notice. The present $54 million settlement is fair and appropriate in light of all the circumstances of the case. The Class Notice correctly informed members of the partial summary judgment in *Farrar*. But the Class Notice was not deficient in failing to supply in detail the history of the *Farrar* litigation; the Notice was sufficient because it provided a fair basis for concerned class members to solicit advice and pursue further inquiry as to the proposed settlement.

The court further finds persuasive the evidence produced by the plaintiff class showing that the fair value the *Farrar* class action is substantially less than the claims presented here. In addition, the best evidence available to the court indicates that the monetary value of ExxonMobil's deductions from 1996 to the present is $69.8 million.

(Becker Aff. ¶ 8-11). In contrast, the Objectors' claim that the case is worth a substantially greater amount lacks any foundation in fact; it is also inconsistent with their repeated argument in *Farrar* that an accounting is the only appropriate remedy, precisely because the value of the royalty charges cannot be quantified. The settlement amount is fair and equitable, given the delays and uncertainties inherent in continued litigation.

The recovery percentage which counsel for *Farrar* may have obtained in other litigation provides no measure of the fairness of this settlement. This is not only because those recoveries occurred in other cases against other parties, but the evidence suggests that those settlements reflected the settlements of only the most favorable claims, with other potential claims being abandoned. The court must consider the fairness of the proposed settlement from the perspective of the likely recovery in *this* case, coupled with consideration of the uncertain nature of litigation, and the considered business judgment of the parties and counsel. All the relevant factors and admissible evidence support the approval of the proposed settlement.

The Class Notice indicates how to object to the settlement, the allocation and the attorney fees. It further supplies information as to the general nature of the attorney fees to be awarded, and provides that any such award will take effect only with approval of the court. None of the objections provide any basis for concluding that the Settlement Agreement is anything other than a fair and reasonable compromise of the claims asserted by the plaintiff class.

Lahey objects to the Plan of Allocation on the grounds that (1) the Class Notice does not explicitly state the method for him to object to the plan; (2) the distribution schedule was not included within the Class Notice; (3) the allocation includes former royalty owners; (4) the Class Notice does not include certain "Other" wells, which will receive present cash value in lieu of going forward provisions; (5) the allocation is based on volumes rather than deductions; (6) the allocation fails to recognize the stronger claims of those individuals subject to the 1984 Settlement Agreement; (7) the allocation fails to recognize that some claims are subject to a statute of limitations defense; (8) the allocation fails to recognize stronger "proceeds" leases; and (9) the allocation plan provides equal treatment for no-deduction leases.

The court finds that these arguments do not rise to the level of a sufficient objection to the plan of allocation. First, with respect to many of his arguments, Lahey presents no legal authority demonstrating that the claimed deficiencies warrant rejection of the allocation plan. In addition, it does not appear that Lahey has standing to assert many of the objections he asserts, such as his argument on behalf of owners of "Other" wells.

But the court also finds that taken individually, Lahey's objections fail. The Class Notice provides a specific mechanism for objecting to the Settlement, including the system of allocation. The Class Notice does not explicitly spell out the amount of distribution for each royalty owner, but this is not legally required. *In re Checking Acct. Overdraft Litig'n*, 830 F.Supp.2d 1330, 1343-44 (S.D. Fla. 2011).

The Order providing for allocation will require current royalty owners to remit amounts to previous owners, where necessary. The Allocation treats all royalty owners fairly and equitably under the circumstances of the case, and Lahey has failed to show that the distribution will actually render any substantial unfairness. The allocation does not separately privilege members subject to the 1984 Settlement Agreement, but the court finds that, under all the circumstances of the case (including the state of expert damages testimony in *Farrar* and *Hershey*), such claims are not materially stronger that other claims covered by the Settlement. All of the claims, whether arising under "proceeds" leases or under express no-deduction leases, are covered by the Settlement Agreement and are subject the implied Marketable Condition Rule, and the court finds that the Agreement and Allocation reasonably and properly treat these claims in an equal fashion.

The only potentially substantive objection lodged by Lahey is the contention that some claims are subject to the potential statute of limitations defense. However, the court finds that, rather than presenting a fundamental challenge to the Settlement Agreement itself, the objection at most creates a need to modify the allocation. The court assumes that claims arising prior to March, 1996 would be subject to a 50% risk of being found time-barred, and directs that the Plan of Allocation be adjusted to reflect this modification.

This is the superior forum for resolution of the improper deduction claims against ExxonMobil. Both the plaintiff class and ExxonMobil have potentially valid legal arguments supported by substantial evidence. The objections presented to

12

settlement allocation are all either fundamentally misplaced, or simply present alternative views of how the allocation should be undertaken. Each such view is subject to countervailing considerations, and at the end of the day the settlement and allocation plan remain fair, just, and equitable.

*Attorney Fees*

*1. Requested Attorney Fee Award for Class Counsel*

Counsel for the plaintiff class seeks an attorney fee award, pursuant to its contingency fee contract and the terms of the proposed Settlement Agreement, equivalent to one third of the settlement. Because the action is presented here under the court's diversity jurisdiction, the propriety of this award is governed by Kansas law. *Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 1001 (10th Cir. 2008).

An award of one third of the total settlement recovery finds precedent in other royalty deduction cases. *See Freebird, Inc. v. Cimarex Energy*, 46 Kan.App.2d 631, 641, 264 P.3d 500, 508 (2011), *rev. denied* (Kan. June 13, 2012). The court has broad authority over the fees to be awarded in class actions. *Law v. National Collegiate Athletic Ass'n*, 4 Fed.Appx. 749 (10th Cir. 2001). In granting such an award in a class action, the court considers factors including

    (1)  the number of hours spent on the case by the various attorneys and the manner in which they were spent;

    (2)  the reasonable hourly rate for each attorney;

    (3)  the contingent nature of success;

(4)   the extent, if any, to which the quality of an attorney's work mandates increasing or decreasing [the] amount to which the court has found the attorney reasonably entitled.

*Shutts v. Phillips Petroleum*, 235 Kan. 195, 223, 679 P.2d 1159 (1984*), aff'd in part and rev'd in part on other grounds*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed. 2d 628 (1985). In addition, the court may also consider "the amount involved, as it determines the risk of the client and the commensurate responsibility of the attorney, and the result of the case, because that determines the real benefit to the client." *Id*. The *Shutts* factor have subsequently been incorporated into KPRC 1.5(a)(1-8).

The court finds that an award of one third of the total settlement award is consistent with awards in similar Kansas litigation, and finds that the award here should be sustained. First, the award is reasonable in light of the complex nature of the case, and the heavy and intensive effort devoted by class counsel to the discovery and prosecution of the claims of the class. Having reviewed the numerous pleadings submitted in connection with the present litigation, including the motions for class certification and for summary judgment, the court finds that counsel's efforts were extensive and valuable. The discovery obtained from ExxonMobil was voluminous, and preparation of the plaintiff's response required an equivalent level of effort. Further, by its complex and intensive nature, the case necessarily served to prevent plaintiff's counsel from engaging in other legal work. Further, class counsel were aided in their representation by their particular skill, experience, and reputation. Only counsel with substantial experience in such complex royalty litigation could have produced such a successful result.

14

The contingent fee nature of the representation also supports the requested award. By its nature, such representation creates the risk that counsel would receive no compensation in the event of an adverse result.

As noted earlier, an award of one third of the total settlement account is consistent with other Kansas royalty deduction cases. *See, e.g., Coulter v. Anadarko Petroleum*, No 98-CV-40 (Stevens County Dist. Ct. Sept. 17, 2009). And, more generally, a leading authority recognizes that "[e]mpirical studies show that … fee awards in class actions average around one-third of the recovery." 4 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS, § 14:6 (4th ed. 2006).

The results obtained were substantial, with ExxonMobil providing an immediate payment of $54 million, as well as providing additional commitments for future relief. Considering all of the factors present in the case, the court finds that an award of one-third the total settlement award is reasonable and appropriate.

Finally, the court finds that class counsel is justified in recovering out-of-pocket expenses and costs, which in light of the complex nature of the case, exceed one quarter of a million dollars.

### 2. Application of Fleeson, Gooing

Fleeson, Gooing has separately filed an application for an award of attorney fees. (Dkt. 333). This application has generated several responses by class counsel. First, it moved to strike Fleeson's application as improper. (Dkt. 371). Subsequently, the

plaintiff class moved to exclude evidence presented by Fleeson, Gooing presented by affidavit on October 12, 2012. (Dkt. 385).

The motions to strike and exclude are well-taken. First, the application for fees has been submitted by a non-party, without any request for intervention. In addition, under the preliminary settlement approval Order, all objections were required to be submitted on or before a specific date. As noted above, two members of the class objected, but did so without filing any evidence in support of those objections. The Fleeson application for fees, which asserts a claim for fees larger than that claimed by the *Hershey* class counsel, is the functional equivalent of an objection, yet it was submitted without any corroborating documentation.

Further, the October 12 filing cannot in fairness be deemed a reply to the plaintiff's opposition to Fleeson's request for attorney fees, for the simple reason that the supplemental evidentiary filing *preceded* by several hours the opposition which was filed later on October 12.

The court adopted the schedule for objections and response as a means of allowing all participants to present their arguments and evidence in a timely fashion, while simultaneously allowing the court the opportunity to review all information in advance of the scheduled fairness hearing. The applicant's failure to comply with this procedure is contrary to the letter and spirit of the court's directives.

On October 22, 2012, *Farrar* counsel moved for leave (Dkt. 388) to file under seal 60 additional exhibits it wishes the court to consider. These materials are documents previously filed under seal pursuant to a protective order in the *Farrar* action.

16

The court has reviewed the prospective material and for the purposes of completing the record, grants leave to submit the exhibits under seal, but, consistent with its determination to grant class counsel's Motion in Limine (Dkt. 385), also excludes these materials from consideration in the court's decision.

From the announcement of the proposed settlement, *Farrar* counsel has undertaken every possible means, both in this court in the appeals pending before the Tenth Circuit, of delaying the fairness hearing. These attempts have been repeatedly denied by this court (Dkt. 307, 312, 351, 355, 387), and the court finds that Applicant may not achieve the same result by the eleventh hour submission of voluminous evidentiary materials contrary to the orders of the court.

The court finds first, that the Application for fees by non-party counsel is unjustified in the absence of any separate motion to intervene, and accordingly grants the Hershey's class's initial motion to strike on that basis.[2] More importantly, the Application, the functional equivalent of an objection to the settlement, was untimely. In an ordinary case, the delay of two weeks in seeking relief might be excused. In the context of preparing for the present fairness hearing, where the court has adopted specific timing requirements for objections, and the failure to comply with those requirements, which works prejudice to the parties and the court, means that exclusion is an appropriate result. *See Beaird v. Seagate Tech.*, 145 F.3d 1159, 1164-65 (10th Cir. 1998). Third, while *Farrar* counsel argues that striking is a procedure unrecognized by

---

[2] The authority cited by *Farrar* counsel in support of its application, 5-23 Morris Federal Practice, Civil 23.124, is distinguishable. The cases cited in that authority involve fee awards to counsel of record who have participated in the settling action.

the Federal Rules of Civil Procedure, its cited authority, *Silvey v. Cessna Aircraft Co.*, No. 05-1721-KHV, 2007 WL 2253479 (D. Kan. July 27, 2007), merely establishes that motions to strike are not appropriate as to Rule 56 summary judgment motions. *Silvey* does not apply to the striking of pleadings submitted by non-parties.

Even if the court were to deny the plaintiff class's motion *in limine*, the court finds little in the affidavit submitted October 12, 2012, which would support an award of attorney fees. Much of the affidavit presents historical information as to the background of counsel, but does not focus on the touchstone of an award of fees: whether the actions of the *Farrar* attorneys provided any specific benefit to the plaintiff class in this case in its claims against ExxonMobil.

The facts demonstrate that Fleeson initiated the Farrar case in March, 2001, but that the action subsequently lay dormant for the next seven years. Indeed, the case did not proceed to discovery, and ExxonMobil did not even enter an appearance in *Farrar*, until after discovery had commenced in *Hershey*.

The facts further demonstrate that *Hershey* class counsel asked Fleeson to cooperate and consolidate the actions against ExxonMobil, but Fleeson declined. Instead of aiding the *Hershey* action, counsel sought only to protect its own interest in *Farrar*, which represents a smaller subset of the claims presented here.  That action centers on gathering rather than non-gathering claims, does not assert any claims outside the Hugoton field, did not assert the tolling of any limitations period, and included no claims for recovery for NGLs, helium, drip condensate, or conservation fees.

The pleadings filed in the *Farrar* case present narrow issues of law which are not directly controlling here, and had little impact on the far more substantial briefing presented by the parties in this action. The *Farrar* class was certified before the present action, but certification of *Hershey* would have been approved under the facts of the case, regardless of certification in *Farrar*. Indeed, to the extent assistance went in any direction, it appears that the partial summary judgment award in *Farrar* based on the 1984 Settlement Agreement was substantially assisted by the decision in *Hockett v. Trees Oil, 292 Kan. 213, 251 P.3d 65 (2011)*,  a decision which was obtained through the legal efforts of the class counsel in the present action.

Rather than joining in and aiding the prosecution of the *Hershey* action, *Farrar* counsel has actively attempted to undermine the action through intervention and opposition to certification, and within the last six weeks has done everything in its power to prevent a settlement which the court has otherwise found to be fair, reasonable, and adequate. *Farrar* counsel has opposed consolidation and attempted to defeat certification of the present action, arguing that class counsel should be disqualified due to a putative conflict of interest, and (agreeing with ExxonMobil) asserting that many of the claims advanced here are barred by the statute of limitations. The successful settlement in the present action has arisen despite, not because of, the efforts of counsel in *Farrar*.

Participation by counsel in a separate and parallel class action carries the attendant and recognized risk that counsel may not be compensated if counsel in a separate action prevails. *See Coulter v. Anadarko Petroleum*, No 98-CV-40 (Stevens

County, Kansas Dist. Ct.), on appeal, No. 10330-S (Kan.). To avoid such a result, the law permits counsel from separate litigation to split the ultimate fee, based on the existence of joint and cooperative efforts of counsel, and upon the application of the prevailing counsel. *See In re Linerboard Antitrust Litig'n*, No. MDL 1261, No. 98-5055, 2004 WL 1221350 at *17-18 (E.D. Pa. June 2, 2004).

Accordingly, Rule 23(h) authorizes an award of attorney fees to class counsel, but also provides "in some situations, there may be a basis for making an award to other counsel *whose work produced a beneficial result for the class*, such as [1] attorneys who acted for the class before certification but were not appointed class counsel, or [2] attorneys who represented objectors to a proposed settlement under Rule 23(e), or [3] to fee motion of class counsel." (Emphasis added).

Fleeson's Application falls under none of these provisions. Fleeson did not act on behalf of the *Hershey* class prior to certification, the actions were never consolidated, and the Application was not submitted in conjunction with the fee application of class counsel. Fleeson does represent two Objectors, but this representation does not support an award since the objections have not produced any material beneficial result for the class. *See In re Rent-Way Securities Litig'n*, 305 F.Supp.2d 491, 520 (W.D. Pa. 2003) ("[a]bsent a showing that the objector substantially enhanced the benefits to the class under the settlement, the objector is not entitled to a fee"). The Third Circuit decisions cited by Fleeson do not support a contrary result. "Rather, in the Third Circuit, "[w]hen awarding fees to non-lead counsel, '[o]nly work that *actually confers a benefit* on the class will be compensable.'" *Drazin v Horizon BCBS of New Jersey*, 832 F.Supp.2d 432, 444 n. 19

(D.N.J. 2011) (quoting and adding emphasis to *Milliron v. T-Mobile*, 423 Fed.Appx. 131, 134 (3rd Cir. 2011).

Even if the court considers the documents submitted by Fleeson outside the required deadlines, a fair review of the history of the *Hershey* and *Farrar* litigation fails to show that Fleeson provided any material benefit to the *Hershey* class. Except for the a few isolated instances, Fleeson declined offers of cooperation and assistance by Gunderson, Sharp, and explicitly rejected Gunderson's request to jointly prosecute the case against ExxonMobil. Fleeson did not cooperate with discovery in the present action, and provided no expert testimony. It forwarded no discovery to Gunderson, Sharp. As noted earlier, Fleeson's discovery and its pleadings in *Farrar* played no role in aiding class counsel or materially altering the decisions which have been rendered by the court.

Certification of the plaintiff class in the present action was not dependent on certification in *Farrar*, and was predicated on an entirely separate evidentiary record. The decision reflects instead the court's conclusions as to the "'long history of [Kansas courts] certifying class actions' involving oil and gas leases," (Dkt. 135, at 200). Similarly, the focus in *Farrar* was on the 1984 Settlement Agreement, which has not been a substantial factor in any of the claims addressed here, and which was not a substantial factor in the negotiations of the parties which led to the Settlement. Fleeson separately briefed its motion for summary judgment on the issue of marketability in *Farrar*, but a close comparison of that comparatively short pleading with the voluminous summary judgment brief submitted by Gunderson, Sharp in this action fails to demonstrate any

actual influence or assistance to the interests to the plaintiff class. Indeed, the *Farrar* marketability brief was filed under seal, eliminating the ability of Gunderson, Sharp to profit by that pleading.

This result is equally true for the expenses claimed by Fleeson, with no demonstration that the these expenses (most of which reflect expert witness fees) were ever shared with class counsel.

The attorneys of Fleeson, Gooing are experienced and capable counsel. But the court finds credible and persuasive the evidence demonstrating that the actions of Fleeson, Gooing provided no specific or tangible benefit to the successful prosecution of the present action. (Dkt. 360-4). Any benefits were both insubstantial and inadvertent. To the extent that Fleeson has sought to affect the present litigation and the ultimate settlement, it has been to retard or undermine it. Given all the circumstances of the case and the controlling standards for awarding fees for non-class counsel, the requested award cannot be sustained.

### 2. Incentive Award

In addition to the settlement itself and the allocation plan, the Objectors also challenge the Incentive Award accorded to Class Representative Jimmie Hershey. Incentive awards perform the legitimate function of encouraging individuals to undertake the frequently onerous responsibility of named class representative. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722–23 (7th Cir.2001). While such awards are to be used with caution, *id.*, they may be appropriate in a given action.

Under Kansas law, such an award may be appropriate upon review of "(1) the actions the class representative took to protect the interests of the class; (2) the level of benefit that the class received from the class representative's actions; and (3) the quantity of time and effort the class representative spent in pursuing the litigation." *Freebird, Inc. v. Cimarex Energy*, 46 Kan.App.2d 631, 646, 264 P.3d 500, 505 (2011).

Here, there is evidence Jimmie Hershey was required to remain in contact with counsel, and stayed informed about the status of a highly complex state-wide gas royalty class action. He further supplied discovery, traveled to Liberal for deposition, and reviewed and approved the settlement.

In the present case, the Incentive Award is 1/10 of 1% of the total settlement. In comparison, the Kansas Court of Appeals if *Freebird* approved an incentive award of a full 1%.

The court finds under all the circumstances of the case the Incentive Award is fair, reasonable, and appropriate.


### 3. Opting Out of the Gregg Trust

Also before the court is the Motion to Confirm Exclusion filed on behalf, or apparently so, of the class member the Gregg Trust. The Trust has filed a notice opting out of the proposed settlement, coupled with a motion seeking an order "confirming that the Gregg Trust is no longer a member of the class in this case, [and] is no longer bound by the Court's previously-issued injunction," thus freeing it to resume

prosecution of the appeal in *Farrar*. (Dkt. 338, at 6). The Trust argues that having opted out, it is no longer subject to the jurisdiction of the court.

ExxonMobil opposes the motion, arguing that the Trust has not effectively opted out. It contends that the putative action opting out is ineffective because the Trust is represented by two trustees, Keith Gregg and John Gregg, with only the former expressing a desire to opt out. Further, Keith and John Gregg remain as class members in their individual capacities, and so remain subject to the court's jurisdiction. Finally, ExxonMobil argues that the Trust dissolved pursuant to its express terms when all of its assets were distributed. In his deposition, Keith Gregg was asked directly if "at this time does the trust really have any property?," and he responded, "No."

The court finds that the Gregg Trust has validly opted out of the plaintiff class. Notwithstanding his deposition testimony, Keith Gregg has introduced an affidavit stating that the trust has retained valuable one asset – the cause of action against ExxonMobil. Reviewing all of the evidence, the court finds that the Gregg Trust has established that it has correctly opted out of the plaintiff class.

However, the court denies the Trust's requested relief "confirming [it] is no longer bound by the Court's previously-issued injunction."  That injunction applies not only to parties but to members of the class or to  "anyone acting on their behalf or in concert with them … either directly or indirectly," including "any person that is a party (or their counsel)." (Dkt. 292). Keith and John Gregg remain members of the class, and subject to the court's jurisdiction, as is Fleeson, Gooing.

The cases cited by the Trust are distinguishable. *Drelles v. Metropolitan Life Insurance*, 357 F.3d 344, (3rd Cir. 2003) held that a defendant in a prior class action could not enjoin a party opting out from conducting discovery in support of a separate state claim. But the injunction sought was not, as here, a temporary injunction in support of a pending class action settlement, and thereby authorized (as this court has previously held) by separate federal statutory authority. Moreover, unlike here, there is no indication in that case that the party opting out of the class settlement was acting in concert with other members who remain subject to the jurisdiction of the court.[3]

Of course, the Trust is no longer subject to the court's temporary injunction. That injunction terminates by its own terms with the present Final Judgment (Order, Dkt. 292, ¶ 8(a)).

However the Trust is now subject to Paragraph 25 of the Final Judgment, which provides that "[e]ach Class Member and anyone acting in concert are hereby barred and permanently enjoined from prosecuting, commencing or continuing any of the Released Claims." Absent any appointment of new trustees and employment of different counsel, any action by the Trust necessarily reflects action in concert persons subject to the court's jurisdiction.

---

[3] The other cases cited by the Trust are equally inapplicable. *See In re Insurance Brokerage Antitrust Litig'n*, 374 Fed.Appx. 263 (3rd Cir. 263) (upholding denial of *permanent* injunction against future state litigation by former class member). The other authorities cited by the Trust similarly involve either a blanket injunction unrelated to a pending settlement (*Waslilwski v. Eastman Kodak*, 1986 WL 7571, *2 (E.D. Pa. 1986) (injunction issued following certification, not as a temporary relief pending settlement approval)) or fail to indicate any concern that the opting out party is acting in concert with class members to circumvent the effect of the injunction. *See In re Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigat'n*, 11-MD-2247, 2012 WL 3568821 (D. Minn. Aug. 17, 2012).

IT IS ACCORDINGLY ORDERED this 26th day of October, 2012, that the court hereby grants plaintiff's Motion for Order Approving Class Settlement, Attorneys Fees, Expenses and Incentive Award (Dkt. 313); the Objectors' Motion to Establish Subclass (Dkt. 391) is denied as both unjustified and untimely; Fleeson Gooing's Sealed Motion for Leave to File Under Seal (Dkt. 388) is granted, while its Application for Fees (Dkt. 333) is denied; the Marie Gregg Trust's Motion for Order Confirming Its Exclusion From This Action (Dkt. 337) is granted in part and denied in part, as provided herein; plaintiff's Motions to Strike (Dkt. 371, 385, 393) are granted for good cause shown; defendant's Objections (Dkt. 400) are denied as moot.

s/ J. Thomas Marten, Judge
J. THOMAS MARTEN, JUDGE