IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JIMMIE HERSHEY,
    individually and on behalf
    of all others similarly situated,
         Plaintiff,

      vs.                       Case No. 07-1300-JTM

EXXONMOBIL OIL CORPORATION,
         Defendant.

FINAL JUDGMENT

On October 23, 2012, the court conducted a final fairness hearing on the proposed Settlement. Consistent with the findings of the court at the hearing and as subsequently confirmed its Orded resolving the various motions before the court, the court hereby enteres this Judgment and Final Settlement Approval Order. Specifically, the court ORDERS, ADJUDGES, AND DECREES that :

1. This Order and Judgment incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used herein shall have the same meanings as assigned to them in the Agreement.

2. This Court has jurisdiction over the subject matter of the case and over all parties to the case, including all Class Members.

3. Except as to any individual claim of those persons identified below who have validly and timely requested exclusion from the Class, the case and all claims contained therein, including all of the Released Claims, are dismissed with prejudice as to the Class Representative, Class, and each of the Class Members. The parties are to bear their own costs, except as otherwise provided in the Agreement.

4. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Court hereby approves the settlement set forth in the Agreement and finds that said settlement is, in all respects, fair, reasonable, and adequate to, and is in the best interests of, the Class Representative, the Class, and each of the Class Members. In so doing, the court has considered any argument that could reasonably be made against approval of same, even if such argument was not actually presented to the Court by pleading or oral argument.

5. This Court further finds the settlement set forth in the Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Class and ExxonMobil.  Accordingly, the settlement embodied in the Agreement is hereby approved in all respects and shall be consummated in accordance with its terms and provisions. The parties are hereby directed to perform the terms of the Agreement.

6. Upon this Judgment becoming Final, the Class Representative does, and each of the Class Members shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released

Claims against the ExxonMobil Releasees. Any and all Released Claims are permanently barred, enjoined, and finally discharged.

7. Adequate notice of the settlement of the Litigation has been given as required by law to the members of the Settlement Class.  All members of the Settlement Class have been afforded a reasonable opportunity to opt out of the Settlement Class and to object to the settlement.

8. A list of those members of the Settlement Class who timely and validly have opted-out of this settlement is set forth in Appendix A. Those persons listed in Appendix A are not bound by any of the following provisions of this Final Judgment, and they are not entitled to receive a Distribution Check as a result of this class settlement. Objectors Lahey and Farrar Trust object to certain aspects of the class settlement notice; these objections are overruled.

9. Upon entry of this Judgment, each and every Class Member is deemed to have accepted and ratified the Agreement.

10. The settlement is fair, reasonable, and adequate. Under the Settlement, ExxonMobil has agreed to pay $54 million in cash, has already reimbursed over $800,000 to the Class on conservation fees, pay $200,000 in administrative expenses, has stopped taking conservation fee deductions altogether, and agreed to limit some gathering fee deductions in the future amounting to an additional $5.5 million present value.  The Total Settlement Amount is valued at over $60.5 million.

11. The settlement occurred through the mediation efforts of Dick Watt, the numerous meetings among counsel over the years of litigation, and the affidavit

testimony of both defense and Class Counsel establishes that the settlement process was lengthy, arduous, fair, unbiased, and productive. The settlement process was free of collusion or reverse auction.

12. Serious questions of law and fact remain contested between experienced counsel and parties alert to vindicate their interests. The settlement provides a means of gaining immediate valuable and reasonable compensation, foreclosing the prospect of uncertain results after years of additional discovery. Finally, the considered judgment of the parties, aided by experienced legal counsel, supports the settlement.

13. The court approves the plan of allocation as fair, reasonable and adequate. The court specifies that the the Plan of Allocation for damages older than March 1996 be discounted at 50%. Thus modified, the Plan of Allocation and Distribution Order is finally approved and ordered.

14. Distribution under the Plan of Allocation will be made to the current royalty owner Class Members based on the assumptions that: (a) very few actual sales of royalty interests have occurred in gas produced from the Class Wells from January 1, 1988 to the present; (b) where sales did occur, it was the intent of the parties that the buyer was entitled to receive payment for past claims; and (c) where royalty interest passed through inheritance, devise or interfamily transfers, it was the intent that the heir, or devisee or transferee also receive payment for past claims.  To the extent that these assumptions are not correct in relation to particular transfers of interests, the Court orders that Class Members who receive payment shall in turn make payment to the proper person entitled to such payment.

15. Any Class Member who receives a payment pursuant to this Settlement and fails to make payment to the proper person pursuant to the paragraph above, shall indemnify Class Counsel, the Class Representative, the Court appointed Claims Administrators, ExxonMobil and ExxonMobil's counsel against any claim made against any of them by the person asserting entitlement to the payment, but only to the extent of the payment received.  ExxonMobil shall have priority to recovery for the indemnity unless one of the other indemnitees has made payment to the proper party.

16. Consistent with the findings above, the court approves the request for Attorney Fees of Class Counsel.

17. Consistent with the findings above, the court approves the request for $309,242.39 in reasonable and necessary expenses of Class Counsel.

18. Consistent with the findings above, the court approves the Incentive Award of 1/10 of 1% of the Total Settlement Amount, in the amount of $60,500, plus accrued interest.

19. The Objections of the Farrar Trust and Thomas Lahey to the Certification, the alleged lack of due process, the Settlement, the Plan of Allocation, the Class Counsel Attorney Fees and Expenses, the Class Representative Incentive Award are denied for the reasons stated in the Order Approving Settlement and pursuant to the plaintiff's Proposed Final Settlement Approval Order (¶¶ 44-101).

20. The Application for Fees and Expenses by counsel in *Farrar* is denied for the reasons stated in the Order Approving Settlement and pursuant to the plaintiff's Proposed Final Settlement Approval Order (¶¶ 105-115).

21.  The Settlement nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be offered, attempted to be offered, or used in any way by the parties as a presumption, a concession, or an admission of or evidence of, any fault, liability or wrongdoing by the ExxonMobil Releasees or of the validity of any Released Claims against the ExxonMobil Releasees; or (b) is or may be offered or received as evidence or otherwise used by any person in these or any other actions or proceedings, whether civil, criminal, or administrative, against any parties to the Agreement other than to enforce the terms of the Agreement or orders or judgments issued by the Court in connection with the Settlement.

22. The provisions of Section 4 of the Settlement Agreement providing for "Future Royalties and Rights" in regard to calculating royalty due in the future are hereby adjudged to amend the leases of the Class Members who have not opted out of the Settlement Agreement and will run with the land. Attached hereto as Appendix B are the provisions comprising Section 4 of the Settlement Agreement. A copy of this Judgment may be recorded in the land records of the counties in which the various leases are located to give notice of this amendment to the leases.

23. This lawsuit and all claims asserted therein are hereby DISMISSED WITH PREJUDICE to the refiling of same or any portion thereof. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this Settlement and any award or distribution of the Settlement Fund, including interest earned thereon; and, (b) disposition of the Settlement Fund;

this Judgment therefore is a final appealable Order and Judgment. The Judgment should be entered forthwith by the clerk in accordance with Federal Rule of Civil Procedure 58.

24. Each Class Member is ordered and adjudged to have conclusively released the Released Claims against the ExxonMobil Releasees as defined in the Settlement Agreement.

25. Each Class Member and anyone acting in concert are hereby barred and permanently enjoined from prosecuting, commencing or continuing any of the Released Claims against the Released Parties, by way of claim, counterclaim, offset, or otherwise.

26. All documents designaed as confidential by any party pursuant to the Confidentiality Agreement and Protective Order in the Lawsuit shall be returned to the producing party or destroyed within 30 dyas after the date of this Order and Judgment becoming Final and Non-Appealable and/or as set forth in the Settlement Agreement.

27. The Settlement of the Lawsuit, the Settlement Agreement, the Plan of Allocation and Distribution, and the carrying out of this Order and Judgment may never be used for any purpose in any subsequent litigation against ExxonMobil and the ExxonMobil Releasees, other than to enforce the terms of the Settlement Agreement and this Judgment.

IT IS SO ORDERED this 26th day of October, 2012.


s/ J. Thomas Marten, Judge
J. THOMAS MARTEN, JUDGE

# Appendix A

Class members who have opted out of the settlement:

- Edna D. Olinger Trust (Edna D. Olinger, Trustee)
- Koch Industries, Inc.
- State Farm Insurance Companies
- Osborn Heirs Company
- Estate of Etta Cuccinello (Toni Pfaff, Personal Representative)
- Gregory L. Adams
- Charles W. and Brenda M. Thompson "as joint tenants w/f/r/s."
- The Marie Gregg Trust u/a dated April 26. 1979.

Class members who have requested opting out of the settlement, but who have not opted out in compliance with the requirements for opting out:

- Francis Littell individually and as Administrator of the Estate of Allen Drew Littell Estate.

# Appendix B

The Opt-Out Adjustment is the sum in dollars of the opt-out factors for all Excluded Persons.

## 4.     FUTURE ROYALTIES AND ROYALTY RIGHTS

**Section 4.1.    Calculation and Payment of Future Royalties.** ExxonMobil and each Current Royalty Owner agree that from and after the first day of the first full production month following the date the Settlement becomes Final, the Class Leases shall and shall be deemed to expressly provide for the payment of Royalties for Gas (whenever paid, or required or permitted to be paid in money and not in-kind) in an amount equal to the Royalty Owner's Lease Decimal multiplied by the "Royalty Value" for Gas allocated to production from a Class Lease determined pursuant to Section 4.2. "Lease Decimal" means a Royalty Owner's fractional share of ownership in the production (net of Fuel) from a Class Lease according to the leases, division orders, and other instruments affecting title, as such interests are reflected from time to time on ExxonMobil's books and records.

**Section 4.2.    Determination of Royalty Value.** Royalty Value for Gas volumes allocated to production from a Class Lease (net of Fuel) for any production month will be determined using a "net back" or "cost netting" method as described in this Section 4.2 and Section 4.6. Royalty Value shall be determined from cumulative amounts received by ExxonMobil from the first Arm's-Length Sale(s) of such Gas and Gas Plant Products attributed to such Gas (if such Gas is processed to extract separate Gas Plant Products), less all reasonable fees (including in-kind fees, fees under percentage of proceeds and like processing arrangements), expenses and Fuel attributed to such Class Lease to transport, move, compress, dehydrate, gather, process, fractionate, treat, store, and market the Gas and Gas Plant Products, subject to Section 4.7.

**Section 4.3.   Processing Elections.**   Any election or decision concerning whether to process Gas to extract Gas Plant Products or any particular Gas Plant Product shall be at ExxonMobil's sole discretion.

**Section 4.4.   Special Provision for Certain Wellhead Dispositions.**  Where Gas from any Class Lease gathered on the Hickok Gathering System or the Bushton Gathering System is sold at the wellhead under terms that require the purchaser to bear the fees and costs defined in this Agreement as Gathering Fees and Expenses, then in that event, if the amount realized from said wellhead sale is less than the Royalty Value determined under 4.1, 4.2, 4.6, and 4.7 for Gas and Gas Plant Products had there not been a wellhead sale, then ExxonMobil will pay the Royalty Owner as follows: the Royalty Owner's decimal interest of the amount realized from the wellhead sale plus the Royalty Owner's decimal interest of the difference between the amount realized from the wellhead sale and the Royalty Value of the Gas and Gas Plant Products determined under 4.1, 4.2, 4.6, and 4.7 had there not been a wellhead sale, but said difference shall never exceed the Royalty Owner's decimal interest of $0.364 per MMBtu for said Gas from said Class Lease.

**Section 4.5.  Reasonable Expenses.**  Expenses (i.e. fees, expenses and Fuel listed in Section 4.2) shall be deemed reasonable if such expenses are incurred pursuant to an Arm's-Length Sale(s) or if incurred in a transaction that is not an Arm's-Length Sale, then they shall be deemed reasonable provided they are comparable to the expenses ExxonMobil pays for similar services or goods in the area under Arm's-Length Sales transactions.

**Section 4.6.  Exchanges, Deliveries In-Kind, and Other Dispositions.**   For  purposes of computing Royalty Value of Gas and Gas Plant Products allocated to production from a Class Lease, the amount received for of such Gas  and Gas Plant Products that is transacted in an

exchange, delivery in-kind (not including Fuel) or other similar disposition this Section 4.6 shall apply:

a.    For such Gas and Gas Plant Products transacted in an Arm's-Length Sale, the amount received shall be deemed to be the amounts determined according to the Arm's-Length Sale (or exchange) agreement; or if no value is provided in such Arm's-Length Sale (or exchange) agreement, then an amount equivalent to the amount that ExxonMobil could have received for equivalent Gas and Gas Plant Products sold in an Arms-Length Sale at the place or plant nearest to the Class Well to which such Gas and Gas Plant Products are allocated, net of amounts for the fees and expenses incurred or that would have been incurred and that are described in Section 4.2.

b.    For such Gas and Gas Plant Products exchanged, delivered in-kind (but not including Fuel), sold or otherwise disposed of to an Affiliate then the "amount received" attributed to such volumes so exchanged, delivered or sold shall be equivalent to the amount that ExxonMobil could have received for equivalent Gas Plant Products (whether or not actually manufactured) if sold in an Arms-Length Sale at the place or plant nearest to the Class Well to which such Gas Plant Products are allocated, net of amounts for the fees and expenses incurred or that would have been incurred and that are described in Section 4.2.

c.    For such Gas and Gas Plant Products transacted through an exchange, delivery in-kind or like arrangement, (i) to an Affiliate or (ii) where there

24

is no specific provision for determining such amounts in an Arms-Length Sale agreement, then the amount received will be computed by imputing first-of-month prices from published indexes (e.g., OPIS, Inside F.E.R.C., Gas Daily, etc.) which shall be deemed reasonable provided the index rates or prices applied are for equivalent products transacted at points nearest the place of production or manufacture.

**Section 4.7.   Certain Expenses Not Deducted or Shared.**   In computing the Royalty Value for Gas and Gas Plant Products allocated to Class Wells and Class Leases, ExxonMobil shall not share or deduct (a) Gathering Fees and Expenses, and (b) Conservation Fees currently imposed only on an operator pursuant to K.S.A. 55-176(a), unless expressly authorized by subsequent statutory amendment and any implementing regulation of the Kansas Corporation Commission.

**Section 4.8.   Severance and Other Taxes.**       In computing and paying Royalties to Class Members, ExxonMobil shall deduct, in the same manner as in the past, any severance or other taxes, by whatever name, imposed by law upon all the mineral owners, including taxes imposed upon produced Gas,  that are remitted directly to the taxing authority by ExxonMobil. Class Members shall pay and be liable for the share of taxes attributable to their respective interests. ExxonMobil will adhere to any changes or clarifications of the severance or other tax law by statute, court decision, or administrative regulation so as to cease deducting any severance or other taxes that are not owed or determined to not be owing by Class Members.

**Section 4.9.   Leases and Other Instruments Modified to Conform to this Agreement.**   Each Current Royalty Owner stipulates and agrees that for the consideration recited and paid under this Agreement, this Agreement constitutes an express contract and

covenant that amends and modifies the Royalty Rights and Class Leases, and excludes the existence or claimed existence of any implied covenant to the extent such implied covenant would require Royalties to be computed and paid on Gas on a different basis than set out in this Agreement.

**Section 4.10. Recordable Memorandum of Amendment.**        ExxonMobil        may record in the official public records in the manner provided by law a memorandum of this amendment and modification with respect to any and every Class Lease and may in its discretion record the Judgment so that it appears in the chain of title records for each Class Lease.

**Section 4.11. Contract for Future Payments.**        In addition to the amendment and modification of Class Leases, this Agreement shall constitute a binding contract expressly setting forth the manner in which Royalties will be calculated and paid in the future for Gas severed from the earth by Class Wells under Class Leases. This Agreement may not be modified or revoked by any future division order or by any other means except by a separate writing expressly referencing this Section 4, executed by both ExxonMobil and each Royalty Owner to be affected thereby, and supported by adequate legal consideration. Each Class Member who receives Royalties in the future, and each of their successors in interests, shall be deemed to have accepted Royalties paid according to this Agreement in full satisfaction for Royalties owed on Gas severed from the earth to which the Royalty payment is attributable.

**Section 4.12. ExxonMobil's Interest.**        This Settlement relates and extends only to ExxonMobil's undivided ownership interest in the Class Leases. Therefore, in the event a percentage portion of a Class Lease and the lessee's interest thereunder was acquired by and assigned to ExxonMobil and the remaining percentage portion thereof was acquired by and assigned to a third party(ies) (i.e., a person or entity other than ExxonMobil), then this

Settlement shall apply and be deemed to apply only to ExxonMobil's percentage portion of the Class Lease, and shall not apply or be deemed to apply to the third party's (or third parties') percentage portion of the Class Lease. The Settlement does not apply to any obligation of a third party to pay royalties for its own working interest share. Nothing in this Settlement Agreement shall release or absolve any such third party from any obligations that it would otherwise have or modify any such obligations in any way.

**4.13.   Class Leases and Other Instruments Remain In Full Force and Effect as Modified.**     Except as expressly modified in this Agreement, the Class Leases and other instruments, if any, affecting Royalty Rights of the Class Members shall remain in full force and effect, and this Agreement shall not be deemed to otherwise amend the Class Leases of Class Members.

**Section 4.14.  Ownership Decimals Unaffected.**   The provisions of this Agreement do not alter or amend the fractional share of ownership (*i.e.*, decimal interest) in Royalty Rights held by any Class Member as warranted to ExxonMobil in division orders previously executed or effect any conveyance or transfer of Royalty Rights from one person to another. ExxonMobil may continue to rely upon the statement of such interests in distributing Royalties in the same manner in which it has in the past and nothing in this Agreement shall require ExxonMobil to obtain new division orders from any Class Member as a condition to distributing Royalties computed as provided in this Agreement. No division order or transfer order executed in the future shall affect the provisions of this Section 4 prescribing the manner for calculation and payment of Royalties absent an express agreement signed by both the then Current Royalty Owner and ExxonMobil expressly referring to this Section 4 and supported by adequate legal consideration, and all the provisions of this Section 4 shall be deemed a part of and controlling

with respect to any such division or transfer order.

**Section 4.15. Acceptance and Ratification.** Each Current Royalty Owner shall be deemed by operation of the Judgment to have accepted and ratified this Agreement and their respective Class Leases. The endorsement, transfer, or presentment for payment of any Distribution Check shall be deemed to be, and effective as, an execution of this Agreement just as if inscribed directly upon this Agreement.

**Section 4.16. Reliance by ExxonMobil.** It is understood and agreed that ExxonMobil would not have entered this Agreement or provided the Settlement Fund under the Agreement without obtaining the provisions herein which clarify the manner in which Royalties will be calculated in the future. The Settlement Fund provides consideration for both the release of past claims and the right to pay Royalties in the future in the manner provided in this Agreement.

**Section 4.17. Successor Royalty Owners and Interests Bound.** The specific agreements and covenants contained herein concerning the Royalty Rights and the future calculation and payment of Royalties touch and concern and run with the land. Each Current Royalty Owner agrees that this Agreement shall be binding and be effective against each and all of such Current Royalty Owner's assigns, heirs, legatees, devisees, and other successors in interest.

## 5.   RELEASES AND COVENANTS NOT TO SUE

**Section 5.1. ExxonMobil Releasees Released.** Upon the Settlement and Judgment becoming Final, and for the consideration provided for in this Agreement, each Class Member shall be conclusively deemed to have and by operation of the Judgment adjudged to have fully, finally, and forever released, relinquished, and discharged the ExxonMobil Releasees, and each of them, from any and all liability on or for any and all of the Released Claims. The Class